[L. A. No. 22608.   In Bank.   May 12, 1953.]

ARTHUR A. JONES, Appellant, v. LOUISE B. MARTIN et al., Defendants; ISABELLE WELLINS, as Administratrix etc. et al., Respondents.

Arthur A. Jones, in pro. per., for Appellant.

Belli, Ashe & Pinney, as Amici Curiae on behalf of Appellant.

Macbeth & Ford, Vincent J. Blumberg, Patrick H. Ford and David Sokol for Respondents.

CARTER, J.—Plaintiff appeals from a judgment for defendants, except Mrs. Martin, in an action to recover attorney's fees. Defendants in the original complaint were Mrs. Martin, a labor union—an unincorporated association, and some of the members thereof. By amended complaint, Wellins, an attorney at law, was added as a defendant. Later he died and Isabelle Wellins, as the administratrix of his estate, was substituted.

According to the findings (the case was tried by the court without a jury) plaintiff, an attorney at law, was employed by Mrs. Martin by written contract to represent her in prosecuting a claim against the union for personal injuries arising out of an assault and battery, under which contract he was to receive a contingent fee of 50 per cent of all sums recovered on the claim by action, compromise or otherwise. It was also agreed that plaintiff was to have full charge of the collection of the claim; that a discharge of plaintiff would not affect his right or interest in the claim and a recovery thereon; that the agreement operates as an assignment and transfer *pro tanto* to plaintiff of the claim and right to recover and anything collected thereon. Plaintiff commenced an action on the claim but before it was tried, and on April 1, 1949, defendant, Mrs. Martin, without just cause, discharged plaintiff as her attorney and had defendant Wellins substituted in his place. The action was tried by Wellins and judgment obtained on November 8, 1950, in favor of Mrs. Martin for $24,126.29. While that action was pending and before judgment, plaintiff commenced the instant action on September 25, 1950, in which Wellins was not a party defendant. The complaint was entitled one for money due, and alleged that a judgment had been obtained (apparently, however, it had not yet been entered at that time); that plaintiff was entitled to one-half the judgment under the contract; that the judgment debtors were willing to pay and are indebted to plaintiff and should be enjoined from paying to Mrs. Martin; and that plaintiff, by reason of his contract, had a lien on the judgment for one-half thereof. The amended complaint filed in May, 1951, made Wellins a party and charged him with having received and paid out in part, the $20,000 which was received in settlement of the judgment, knowing of plaintiff's claim and lien, and that he held the $20,000 as constructive trustee for plaintiff. Wellins knew of the pendency of this action on or about November 15, 1950, and of plaintiff's contract at all times since April 8, 1949. The union also knew of the con-

tract at all times since April 18, 1949, and there had been served upon them a written notice of lien on April 27, 1949. On August 16, 1950, plaintiff orally agreed with David Sokol, the union's attorney, that Sokol would notify plaintiff when the union had paid the judgment or a compromise of the action and plaintiff would then attempt to attach the money. The action was settled for $20,000 on April 16, 1951, by check to Mrs. Martin and Wellins. On April 17, 1951, Wellins deposited the check to his account and paid $4,000 to the union's workmen's compensation insurance carrier and $8,000 to himself as attorney's fees. On April 20, 1951, he paid the balance of $8,000 to Mrs. Martin and she left the state. Sokol telephoned plaintiff's office on April 16, 1951, to notify him of the settlement but was unable to contact him. He did notify him on April 17, 1951, at which time plaintiff made no protest or objection to the payment of the settlement amount, or claim that it violated his rights and did not assert any claim of lien.

On September 25, 1950, plaintiff filed in the instant action an affidavit for attachment which stated that the union and Mrs. Martin were indebted to him for $12,063.15, on contract and the payment has not been secured by a lien or mortgage on personal property. The sheriff was instructed to levy on the judgment. On April 21, 1951, plaintiff again executed an affidavit for attachment, stating that defendants in the instant action were indebted to him on contract for $10,000 and that its payment is not secured by any lien upon personal property. The attachment was levied on Wellins' bank account and was not discharged until Wellins' death on June 15, 1951. On April 23, 1951, Wellins told plaintiff of the disbursement of the settlement money as above described. Wellins died on June 15, 1951, and his administratrix was substituted in his place.

Finally it was concluded that plaintiff had waived his claim for an attorney fee lien and defendants ceased to be constructive trustees of the fund upon the waiver; that plaintiff had filed no claim against the estate of Wellins pursuant to § 707 of the Probate Code and hence his action was premature.

It was also concluded that plaintiff have judgment for $8,000 against Mrs. Martin but that plaintiff waived his attorney lien as to the other defendants and is estopped to assert any lien; that plaintiff take nothing as to those defendants. Judgment was accordingly entered.

Plaintiff contends that even if he lost his "attorney's lien" he did not lose his cause of action against the union or Wellins, such cause of action being based upon payment by the debtor, the union, to the assignor Mrs. Martin, after notice to the debtor of the *pro tanto* assignment by Mrs. Martin to plaintiff of whatever was recovered on her claim for damages against the union; that Wellins, and later his administratrix, held the money received from the union as constructive trustee because he had received it with knowledge of plaintiff's claim under his attorney's fee contract; that there was no estoppel or waiver of either his lien, his cause of action, or right to assert a constructive trust; that because there was a constructive trust it was not necessary to file a claim against Wellins' estate under section 707 of the Probate Code.

There is no question that the union and Wellins were fully advised of plaintiff's contract with Mrs. Martin and any rights he had thereunder and the court so found. No question is raised as to the validity of the "assignment" features of that contract or that a lien could have been thereby created. The contract was not unconscionable and plaintiff was discharged without cause. ■ An attorney employed under a contingent fee agreement who is wrongfully discharged by his client, is generally entitled to the same amount of compensation and under the same contingency as if he had completed the services contemplated. (*Salopek* v. *Schoemann*, 20 Cal.2d 150 [124 P.2d 21]; *Zurich G. A. & L. Ins. Co., Ltd.* v. *Kinsler*, 12 Cal.2d 98 [81 P.2d 913]; *Denio* v. *City of Huntington Beach*, 22 Cal.2d 580 [140 P.2d 392, 149 A.L.R. 320]; see cases collected 6 Cal.Jur.2d, Attorneys at Law, § 197.) ■ And "A contingent fee agreement vests the attorney with an equitable interest in that part of the client's cause of action which is agreed upon as the contingent fee. This proposition may be given practical effect by the imposition of a constructive trust for the protection of the attorney's equitable interest, by acknowledging the existence of an express trust created by the contingent fee agreement in favor of the attorney, or by ruling that neither the client nor the opposite party, if the latter has knowledge of the attorney's rights under the contingent fee agreement, can so compromise the litigated subject matter as to defeat the attorney's rights. . . . ■ However, an attorney under a contingent fee agreement has no special or charging lien, unless it has been specifically contracted for." (6 Cal.Jur.2d, Attorneys at Law, § 192.) ■ It is also true that a debtor will not be dis-

charged from his obligations by performance rendered to the assignor after notice of the assignment. (*McCarthy* v. *Mt. Tecarte L. & W. Co.*, 110 Cal. 687 [43 P. 391]; *Greenlee* v. *Los Angeles Trust etc. Bank*, 171 Cal. 371 [153 P. 383]; *H. D. Roosen Co.* v. *Pacific Radio Pub. Co.*, 123 Cal.App. 525 [11 P.2d 873]; *Graham Paper Co.* v. *Pembroke*, 124 Cal. 117 [56 P. 627, 71 Am.St.Rep. 26, 44 L.R.A. 632]; *Nelson* v. *Fernando Nelson & Sons*, 5 Cal.2d 511 [55 P.2d 859], Rest. Contracts, § 170.)

It would appear, therefore, under the foregoing rules that neither the union nor Wellins could pay the money recovered to Mrs. Martin and be relieved of the obligation under the assignment, or "equitable interest," "lien" or constructive trust unless plaintiff waived or was estopped to assert such rights, as was found by the court.

In regard to the union it is clear that plaintiff waived or is estopped to assert any "lien" or "equitable interest." We have the two attachment affidavits in which it was asserted under oath by plaintiff that he had no lien— that the payment of his claim for attorney's fees was not secured by any "lien." That may well be interpreted to include any equitable interest. There is also the oral agreement of August 16, 1950, between Sokol, the union's attorney, and plaintiff, found by the court, that "Sokol would notify said plaintiff . . . when his clients, the said . . . [Union] had paid any judgment or compromise of said action . . . and that said plaintiff . . . would then try to attach the money by proceeding in this then pending action . . . " from which it is implicit that plaintiff was not only not insisting on his right to a lien-equitable interest but was also waiving any objection he had to the payment to his assignor instead of to him.

The waiver of or estoppel to assert a lien or an equitable interest in property does not necessarily mean that the obligation secured by the lien or giving rise to the interest is lost, as it may exist without the security or other assurance that it will be discharged. But here the court was justified in concluding that not only the lien and equitable interest were lost, but also the obligation, because, implicit in the oral agreement is an authorization by plaintiff (assignee) that the union (debtor) could pay the assignor (Mrs. Martin) rather than him. Subsequent to the agreement, and on April 16, 1951, Sokol paid to Mrs. Martin and Wellins the $20,000 settlement, after trying unsuccessfully, but without fault on his part, to notify plaintiff thereof. He notified him on April

17, 1951, and the court found that "At said time of said notice said plaintiff made no protest or objection to said payment, made no claim that it violated any of his rights, and made no assertion of any right to a lien on the fund before said payment."

Plaintiff makes numerous claims with respect to the foregoing, such as asserted negligence and fraud on Sokol's part, no justified reliance on the oral agreement, and further that his action (the instant one) commenced in September, 1950, after the oral agreement, charging the union with responsibility, prevented reliance on the agreement by the union. The whole course of events and conduct of plaintiff subsequent to the commencement of his action, and thereafter, showed that he was not relying upon a claim against the union. These events, supported by adequate evidence, are summarized by the trial court in its memorandum opinion as follows: "The minute order for judgment in the Schneiderman case [the personal injury action] was made on August 15, 1950. On the next day Mr. Sokol, attorney for the Union defendants, wrote plaintiff saying 'It is very urgent that you get in touch with me and I shall appreciate hearing from you.' (Exhibit B.) Mr. Sokol previously had been notified in writing of plaintiff's claim of an attorney's lien. Shortly after receipt of this letter plaintiff called at Mr. Sokol's home and was told that the latter was at a loss to know what his, plaintiff's, rights were against Sokol's clients, that he knew of no right to a lien against them and that he would like to know what plaintiff wanted him to do. Thereupon plaintiff said that all he would ask of Mr. Sokol was to notify him when the defendants had paid the judgment and that he would try to attach. This is all he asked Mr. Sokol to do. When the judgment was entered, Mr. Sokol promptly notified plaintiff of that fact. Thereupon an appeal was taken, followed ultimately by a compromise in April, 1951. The . . . Union sent its $20,000 check to Mr. Sokol who received it on April 16, 1951. He called plaintiff that same day and before contacting Mr. Wellins concerning receipt of the check. Being unable to reach plaintiff, he told Mr. Alperin, his office associate, that if Mr. Jones should call, to tell him of the fact of the receipt of the money to close the settlement of the judgment. But Mr. Wellins was pressing him for a consummation of the compromise and so on that same day the $20,000 was paid to him by Mr. Sokol. On the 17th Sokol reached plaintiff by telephone and plaintiff said that his secretary had not been in

the office on the 16th. He also said that he would attempt to attach or restrain the payment of the money by Wellins. Mr. Sokol heard no more from Mr. Jones until on the 25th of April. In the meantime the alias writ of attachment was issued on the 23d, based upon plaintiff's affidavit of the 21st. Although this writ was not levied on any property of the union defendants, Mr. Sokol was curious and on the 25th called on Mr. Jones, asking him why he was keeping his, Sokol's clients in the case, asserting that no attorney's lien could run against them,—a position he still maintains and in apparent good faith. Plaintiff said he did not know, but he thought he might have something. The significance of this conversation of the 25th,—after the money had been paid over to Wellins,—is that it shows plaintiff had little confidence in his lien and was relying upon other remedies, such as injunction and attachment. Later, when Mr. Sokol reproached him for inserting in the amended complaint herein an allegation that he, Sokol, had promised to deposit the money in court, Mr. Jones replied that he had to put something in there. In fact, plaintiff never made any such request and Mr. Sokol made no such promise. He fully performed his promise to plaintiff both in letter and in spirit. It is apparent from the foregoing that the court accepts on all points of conflict the testimony of Mr. Sokol rather than that of Mr. Jones, whose credibility has been destroyed in divers ways and respects. The charges of unethical conduct which were hurled at Mr. Sokol by Mr. Jones from the witness stand are untrue.

"Plaintiff's conduct justifiably led Mr. Sokol to believe that he did not and would not stand upon his claim of a lien. The union defendants have changed their position to their prejudice in reliance upon plaintiff's conduct and he is estopped now to insist upon the lien against them. . . ."

Plaintiff's main argument on this point (waiver of lien) seems to center around the alleged incredibility of the union's witness Sokol. That was a question for the trial court which was resolved against plaintiff and it was justified in drawing reasonable inferences which established a waiver or estoppel rather than those to the contrary.

It is urged that estoppel or waiver cannot apply because there was no misleading conduct or statements by plaintiff as to present facts—only future promises were made. As seen from the oral agreement and other conduct of plaintiff, there was a present intent to abandon the claim against the union.

■ Plaintiff claims that the estoppel or waiver was not properly pleaded because it was alleged in the union's answer that the agreement was made when the substitution of attorneys was filed rather than in August, 1951, as found by the court. It was alleged in the answer that at the time of the substitution plaintiff told Sokol there was nothing he could do "until any money recovered by the plaintiff . . . was paid by these defendants and that plaintiff would appreciate it if David Sokol would advise plaintiff when the matter came to trial and when judgment was entered"; that thereafter at various times Sokol communicated with plaintiff, and after entry of the judgment in the personal injury action plaintiff again said that all he expected of Sokol was to advise plaintiff when payment was made, and there was nothing else Sokol could do, and plaintiff could do nothing as to the payment until payment had been made. The court found the oral agreement as above mentioned and that the allegations of the answer were true except that it is not true that plaintiff's request to Sokol to keep plaintiff posted was made at the time of substitution, or that plaintiff said Sokol could do nothing until payment, or that Sokol's discussion concerning what action plaintiff wanted from Sokol was shortly after the entry of the judgment or by telephone. But it is true that "plaintiff in said discussion did state that all he wanted said Sokol to do in plaintiff's behalf was to advise plaintiff when payment had been made to defendant Louise Martin or her attorney, Marvin Wellins; and it is not true that plaintiff advised said Sokol that there was nothing else that said Sokol could do, but it is true that plaintiff did advise said Sokol, shortly after August 15, 1950, that there was nothing else said Sokol should do as far as plaintiff's rights were concerned; and it is not true that plaintiff at said time stated to said Sokol that under the law plaintiff could take no action whatsoever until said Sokol or the defendants he represented had paid over the moneys pursuant to the judgment to said Louise Martin." We do not believe that plaintiff was prejudiced. He was advised of the situation he had to meet and the seeming variances as to times was not vital. Indeed, plaintiff admitted the conversation in regard to the agreement:

"Q. BY MR. SOKOL: Didn't you tell me in my home when I asked you what I could do, that the only thing—you told me 'Sokol, when you pay the money, let me know and then I will attach it.' Did you or did you not tell me that, in my

home? A. That was part of the conversation, but not all of it. You are leaving out other parts that are very important."

In regard to Wellins it appears that recovery against his administratrix was properly denied because of plaintiff's failure to file a claim against the estate. Section 707 of the Probate Code provides that all claims arising upon contract must be filed or presented within the time required or they are barred. Likewise a claim must be presented or filed where, as here, an action against decedent involving the claim is pending at the time of his death and no recovery may be had unless there is proof of the filing or presentment of a claim. (Prob. Code, § 709.) Here plaintiff did not present or file any claim.

He endeavors to escape the claim requirement by asserting that none is required where he is, as here, asserting a constructive trust against Wellins, decedent. (See 11A Cal.Jur. 706-707, 711-712.) The theory is that by reason of the trust the beneficiary has an interest in specific property included in the assets of the estate—a claim that such interest belongs to him, not to the estate, as distinguished from a debt or obligation arising out of contract.

That argument will not aid plaintiff because he has waived or is estopped from asserting any equitable interest in any property of Wellins' estate by the following: In his original complaint he did not even include Wellins as a named party, and while he mentioned a lien he asserted that he was entitled to half the recovery under his contingent fee contract, and that the whole is due and owing, and that defendants are indebted to plaintiff under said contract. In his amended complaint filed on May 24, 1951, when he named Wellins as a defendant, he does allege that Wellins held the $20,000 proceeds of the settlement as constructive trustee, and he also alleged that Wellins was indebted to him in the sum of $10,000. In his first affidavit for attachment on the original complaint, he asserted that defendants (union and members) were indebted to him on a contract for the direct payment of money and it was not secured by any lien. The same statements were made in his second affidavit for attachment which was filed on April 23, 1951, and an attachment was issued and levied on Wellins' bank account and not released until after Wellins died on June 15, 1951. We think, from the foregoing, it is clear that plaintiff had lost any claim to an interest in any property of Wellins' estate, and when the latter died, plaintiff's only claim was for money arising from

contract, and hence required the presentment or filing of a claim. In *Steiner* v. *Rowley,* 35 Cal.2d 713 [221 P.2d 9], the complaint had counts on contract and tort involving the same transaction. Plaintiff attached and it was held that he was estopped to rely upon the action in tort. Similarly, here plaintiff attached the bank account of Wellins indicating reliance upon a contract debt rather than a claim to specific property as the beneficiary of a constructive trust.

The judgment is affirmed.

Shenk, J., Edmonds, J., Schauer, J., and Spence, J., concurred.

Appellant's petition for a rehearing was denied June 4, 1953.