[Civ. No. 48216. Second Dist., Div. One. Sept. 17, 1976.]

JOHN N. SICILIANO, Plaintiff and Appellant, v.
FIREMAN'S FUND INSURANCE COMPANY et al.,
Defendants and Respondents.

**COUNSEL**

Michael Korn for Plaintiff and Appellant.

Haight, Dickson, Brown, Bonesteel & Rigg, Roy G. Weatherup and Robert P. Khoury for Defendants and Respondents.

**OPINION**

**LILLIE, J.**—The first three causes of action of plaintiff's first amended complaint were against only Edward Lyons who apparently remains a party defendant to the lawsuit; the fourth, fifth and sixth causes of action are against Fireman's Fund Insurance Company (hereinafter referred to as Insurer) alone. Insurer's demurrer on the ground the pleading "fails to state a cause of action against" it, was sustained without leave to amend. An order of "partial" dismissal was entered from which plaintiff appeals.[1]

---

[1]Named as defendants in the caption of both the complaint and the first amended complaint are—Edward Lyons (not a party to this appeal), Fireman's Fund Insurance Company (the demurring defendant and respondent herein), and Fireman's Fund American Insurance Companies (which does not appear to have been served and which has not appeared by demurrer or otherwise). On August 28, 1975, the trial court signed and filed an order of "partial" dismissal whereby the action was dismissed "as to the 4th, 5th and 6th causes of action as to the Fireman's Fund Insurance Company only." On September 10, 1975, the trial court signed and filed an order of dismissal in which it was recited that the demurrer of Fireman's Fund Insurance Company, a corporation, Fireman's Fund American Insurance Companies, having been sustained without leave to amend, the action "is dismissed" as to Fireman's Fund Insurance Company and

Common to each of the three causes of action against Insurer are the following allegations: about October 1, 1971, defendant Lyons retained plaintiff attorney to represent him in connection with a claim for personal injuries arising out of an accident involving Merle Karbeling on September 15, 1971. The retainer agreement was in writing (copy attached to amended complaint) and provided for a contingent fee plus express creation of a lien in favor of plaintiff counsel on any moneys collected arising out of Lyon's claim from said accident. Plaintiff performed all conditions required under the written agreement except as his performance has been rendered futile and impossible by Lyons' actions. About December 1, 1972, Lyons discharged plaintiff as his attorney without cause and proceeded in propria persona in the action on the claim entitled Lyons v. Karbeling, No. WE C 26422, which plaintiff filed in the Los Angeles Superior Court. (The files in that case contained a substitution of counsel filed Dec. 26, 1972, substituting Edward Lyons "in pro per" as attorney of record in place and stead of John Siciliano.) About December 19, 1972, plaintiff Siciliano notified Insurer (Karbeling's insurance carrier) of the lien which he had under the retainer contract. On information and belief, plaintiff alleged that in August of 1974 Insurer, with knowledge of plaintiff's lien, paid to Edward Lyons the sum of $10,000 in settlement of Lyons' claim arising out of the accident of September 15, 1971, involving Merle Karbeling, Insurer's insured.

The fourth cause of action then alleges that an actual controversy has arisen between plaintiff and defendants concerning their respective rights and duties pursuant to the retainer agreement and the lien conferred by Lyons in plaintiff's favor—plaintiff contends that pursuant to the retainer agreement, he had a lien on a cause of action of Lyons and upon settlement and payment of Lyons' claim by Insurer it became obligated to pay plaintiff the sum of $4,000 pursuant to said agreement and lien; defendants deny the foregoing and particularly Insurer denies

---

Fireman's Fund American Insurance Companies only. The resulting confusion is evident. Fireman's Fund American Insurance Companies, while named in the caption of plaintiff's pleadings, does not appear to be named or charged in any allegations of either complaint. The August 28th order effectively dismissed Fireman's Fund Insurance Company from the suit and the subsequent September 10th order attempts again to do the same as to this defendant (as well as Fireman's Fund American Insurance Companies). Only one thing is certain—the trial court held that the first amended complaint failed to state a cause of action against Fireman's Fund Insurance Company which was the insurer of Edward Lyons, and dismissed the insurer from the suit; and plaintiff's appeal is timely whether it be from the August 28th or the September 10th order, or both.

that any lien was conferred upon plaintiff by virtue of the execution of the retainer agreement.

The fifth cause of action, following incorporation of the common allegations, alleges plaintiff's demand that defendants pay "the amount set forth in the notice of lien," and defendants' refusal.

The sixth cause of action following incorporation of the common allegations, alleges: "By reason thereof, Defendant FIREMAN'S FUND is an involuntary trustee holding the sum of $4,000 in constructive trust for Plaintiff with the duty to pay Plaintiff the amount of said lien."

■ "The subject matter of an action and the issues involved are determinable from the facts alleged rather than from the title of the pleading or the character of damage recovery suggested in connection with the prayer for relief. [Citations.]" (*Buxbom* v. *Smith,* 23 Cal.2d 535, 542 [145 P.2d 305].) "It is unnecessary, therefore, that we determine whether the [pleading] alleges facts sufficient for the declaration of a trust or the imposition of damages. ■ A general demurrer challenges the sufficiency of the pleading to state *any* cause of action and must not be sustained if the pleading states facts from which any liability results, although not for some or all of the relief sought to be obtained. [Citation.] ■ If the pleading states grounds for relief, either legal or equitable, it will stand the test of a general demurrer. [Citation.] It is sufficient if the pleading contains the allegations essential to the statement of any one cause of action, even though an abortive attempt be made to state facts calling for other and different relief." (Italics by Supreme Court.) (*California Trust Co.* v. *Cohn,* 214 Cal. 619, 628 [7 P.2d 297]; see also *Baker Aircraft Sales, Inc.* v. *Cassel,* 200 Cal.App.2d 563, 569 [19 Cal.Rptr. 581]; *Warren* v. *Atchison, T. & S. F. Ry. Co.,* 19 Cal.App.3d 24, 29 [96 Cal.Rptr. 317]; 3 Witkin, Cal. Procedure (1971) 2d ed. § 20, pp. 1705-1706.) Thus, if the first amended complaint states any right to relief, legal or equitable, it was error to sustain the demurrer of Insurer without leave to amend even if the pleading seeks wrong relief rather than that which would be obtainable under the facts.

■ Insurer's assertion that none of the three causes of action allege performance of any service by plaintiff attorney, is erroneous. The retainer agreement was made October 1, 1971, and it was not until December 1, 1972, over a year later, that counsel was discharged. The agreement employed plaintiff to prosecute the action or claim for damages by reason of the accident; that in fact such action (Lyons v.

Karbeling) was filed appears on the face of the amended complaint. In paragraph 12 of the fourth cause of action (incorporated by reference in the fifth and sixth) plaintiff alleges he "has performed all conditions required of him under said written Retainer Agreement except as his performance has been rendered futile and impossible by the actions of said Defendant." No special demurrer was interposed. The allegations are sufficient to allege performance as against a general demurrer.

In *Fracasse* v. *Brent,* 6 Cal.3d 784 [100 Cal.Rptr. 385, 494 P.2d 9], the Supreme Court held that an attorney, employed under a contingent fee contract and discharged by the client before occurrence of the contingency, is entitled on occurrence thereof to the reasonable value of his services rendered to the time of his discharge. Holdings in prior decisions that an attorney discharged without cause becomes entitled to the full amount agreed to in the contract, instead of the reasonable value of services rendered, have been overruled. But *Fracasse* did not abrogate other principles such as expressed in *Salopek* v. *Schoemann,* 20 Cal.2d 150, 156 [124 P.2d 21], to the effect that an attorney who has been discharged is entitled to enforce his lien to the extent of the reasonable value of services rendered to the date of discharge. (*Weiss* v. *Marcus,* 51 Cal.App.3d 590, 598 [124 Cal.Rptr. 297].)

■ While a contingent fee contract with creation of a lien in favor of counsel does not operate to transfer to counsel any part of the client's cause of action (*Fifield Manor* v. *Finston,* 54 Cal.2d 632, 641 [7 Cal.Rptr. 377, 354 P.2d 1073, 78 A.L.R.2d 813]), it does give him a lien upon the recovery (*ibid.,* p. 641), and the attorney is regarded as an equitable assignee of the judgment or settlement to the extent of fees and costs which are due him for services. (*Isrin* v. *Superior Court,* 63 Cal.2d 153, 158-159 [45 Cal.Rptr. 320, 403 P.2d 728]; see also *Tracy* v. *Ringole,* 87 Cal.App. 549, 551 [262 P. 73], quoted in *Isrin* and referred to as "one of the leading cases on the subject.")

In *Herron* v. *State Farm Mutual Ins. Co.,* 56 Cal.2d 202 [14 Cal.Rptr. 294, 363 P.2d 310], a judgment entered on order sustaining demurrer to the complaint without leave to amend was reversed. In a personal injury matter plaintiff attorneys were employed under a contingent contract by Mr. and Mrs. Halverson; defendant insurance company and defendant attorney intentionally induced plaintiffs' clients to discharge plaintiffs as their counsel. The court held that this constituted an intentional interference with plaintiffs' contingent fee contract for which defendant insurer and defendant attorney would be liable in tort. ■ In the case

at bench, it is not alleged that Insurer induced Lyons to discharge plaintiff as his counsel. The first amended complaint does allege that shortly after the discharge, plaintiff notified Insurer of his attorney's lien; that later the Insurer, "with knowledge of Plaintiff's lien," paid to Lyons $10,000 in settlement of Lyon's personal injury claim against Karbeling, its insured. As against a general demurrer the actual notification given by plaintiff to Insurer of the existence of the lien, and the payment to Lyons by Insurer with knowledge of the attorney's lien sufficiently show a deliberate and intentional interference on Insurer's part with plaintiff's lien and rights under the agreement—an intentional interference with plaintiff's "prospective economic advantage" under all the circumstances. The tort of interference with contract is held to be "merely a species of the broader tort of interference with prospective economic advantage." (*Buckaloo* v. *Johnson,* 14 Cal.3d 815, 823 [122 Cal.Rptr. 745, 537 P.2d 865].) Although not a model of pleading, the amended complaint sufficiently alleges an intentional interference by Insurer with the contract lien or the economic advantage therefrom which plaintiff would have gained.

■ In the fourth cause of action, plaintiff prayed for declaratory relief. Insurer contends that an action for declaratory relief does not lie against one who is not a party to the contract. Quoting from section 1060, Code of Civil Procedure, Insurer argues that "Inherent in this statutory right is some sort of legal instrument which exists between the parties," and that plaintiff and Lyons "have apparently entered into some sort of legal relationship involving a contract for which there is a need for a declaration of rights," but it (Insurer) was not a party to that contract. Section 1060 does not require the existence of a legal instrument between parties as a predicate for declaratory relief. Here plaintiff attorney and Lyons had entered into a contingent fee agreement which created a lien in plaintiff who, upon settlement between Lyons and Insurer, thus was an equitable assignee of the amount of the settlement to the extent of the fees due him. Insurer was a party involved in the settlement in which plaintiff attorney had an interest known to it (Insurer). That Insurer was not a party to the retainer agreement did not render it exempt from a declaratory relief action to determine rights and duties under the circumstances.

*Oppenheimer* v. *General Cable Corp.,* 143 Cal.App.2d 293 [300 P.2d 151], and *Greenberg* v. *Hollywood Turf Club,* 7 Cal.App.3d 968 [86 Cal.Rptr. 885], relied upon by Insurer are inapposite. In *Oppenheimer,* plaintiff was an employee of a corporation which had a contract with a

union; he brought a declaratory relief action not only against the corporate employer and the union but against certain individuals who were mere agents of the corporation and who were in no manner involved in any right or duty concerning plaintiff. In *Greenberg*, plaintiff was employed by one Millerick as horse trainer and stable agent; Hollywood Park Turf Club required Millerick to submit to it the names of his employees, and directed removal of plaintiff's name which resulted in his exclusion from the track. The court held that plaintiff properly could maintain declaratory relief against the race track and one Stewart (even though it does not appear any "legal instrument" existed between plaintiff and defendants). Plaintiff also sought declaratory relief against the state racing board on the ground that it had refused him a hearing; his request for a hearing by that board did not claim that he had been excluded from the race track premises under a board rule, which was the only basis on which he was entitled to a hearing by the board. Therefore, the court held that declaratory relief was not proper against the board which in no way was concerned with plaintiff's exclusion from the race track.

Insurer further asserts that plaintiff may proceed against Lyons and needs no relief against it, and if Lyons were dissipating the funds, plaintiff could obtain a temporary restraining order and preliminary injunction against him. That this latter is not adequate, or preventive of declaratory relief was held in a case cited by Insurer—*City of Tiburon* v. *Northwestern Pac. R. R. Co.*, 4 Cal.App.3d 160, 178, et seq. [84 Cal.Rptr. 469] in which it was held that the trial court abused its discretion in sustaining a demurrer to a declaratory relief action. "Neither the fact that a party has another remedy nor that a breach has occurred prior to the commencement of his action compels the court to deny relief. Ordinarily, the alternative remedy, such as damages, injunctive relief and the like would be more harsh, and if he chooses the milder remedy, declaratory relief, the court is not required for that reason to compel him to seek a more stringent one." (*Ermolieff* v. *R.K.O. Radio Pictures*, 19 Cal.2d 543, 547 [122 P.2d 3].) In *City of Tiburon* v. *Northwestern Pac. R. R. Co.*, 4 Cal.App.3d 160 at page 177, the court said: "The remedies suggested by respondents do not justify a refusal to exercise the power to grant declaratory relief under the discretion conferred by the provisions of section 1061 of the Code of Civil Procedure. In *Maguire* v. *Hibernia Sav. & Loan Soc., supra* [23 Cal.2d 719 (146 P.2d 673, 151 A.L.R. 1062)], the court noted, 'While some authorities limit a trial court's discretion to refuse to make a declaration on the ground that other remedies are

available to cases where special statutory proceedings have been provided for the particular type of case or where other remedies would afford more effective relief [citations], all agree that before a court may properly exercise its discretion to refuse relief on that ground, it must clearly appear that the asserted alternative remedies are available to the plaintiff and that they are speedy and adequate or as well suited to plaintiff's needs as declaratory relief. [Citations.]' (23 Cal.2d at p. 732. See also, *Columbia Pictures* v. *De Toth, supra,* 26 Cal.2d 753, 761 [161 P.2d 217, 162 A.L.R. 747]; and *Hermann* v. *Fireman's Fund Ins. Co., supra,* 127 Cal.App.2d 560, 566 [274 P.2d 501].)" ■ See also *Warren* v. *Kaiser Foundation Health Plan, Inc.,* 47 Cal.App.3d 678, 683 [121 Cal.Rptr. 19]: "The discretion to refuse to entertain an action in declaratory relief vested in the trial court by section 1061 is not unlimited. It may be exercised only when there is a basis in fact for the conclusion that the declaration is not necessary or proper. [Citations.] Here there is an inadequate factual basis for the conclusion drawn by the trial court. [¶] Any doubt should be resolved in favor of granting declaratory relief. [Citation.]"

■ Finally, as stated in *Greenberg* v. *Hollywood Turf Club,* 7 Cal.App.3d 968 [86 Cal.Rptr. 885], at page 979, it is "the rule that a plaintiff in a declaratory relief action is entitled to a declaration of his rights, even if it be adverse. [Citations.] Strictly speaking, therefore, a demurrer is not the appropriate weapon with which to attack the merits of a claim for declaratory relief. True, the cases have developed a judicial shortcut whereby the appellate opinion discussing a judgment which follows the sustaining of a demurrer, in effect becomes the adverse declaration which would have been the plaintiff's only right to relief in the lower court. [Citations.] The judgment which should not have been entered is then affirmed on the theory that it would be a waste of time to send the case back to the trial court for the sole purpose of making a declaration necessarily adverse to the plaintiff. This case, however, must go back because of counts IV and V and the reason for applying the rule [last stated] disappears." The case of *Wilson* v. *Transit Authority,* 199 Cal.App.2d 716 [19 Cal.Rptr. 59], upon which Insurer relies, is not contrary to these authorities. In *Wilson,* the complaint for declaratory relief "failed to show an actual controversy between the parties" (p. 722), which is necessary for such an action. Here there is no such defect. It was error for the trial court to sustain general demurrer to the fourth cause of action without leave to amend.

In the fifth cause of action plaintiff alleged his demand for payment and defendants' refusal to pay. Insurer argues, in effect, that this is for, what was designated in *Weiss* v. *Marcus,* 51 Cal.App.3d 590, 601 [124 Cal.Rptr. 297], as, "disregard of a known lien right" or "breach of duty to give plaintiff [attorney] reasonable opportunity to protect his lien." Although in dicta these were recognized as bases of causes of action in *Skelly* v. *Richman,* 10 Cal.App.3d 844, 864 [89 Cal.Rptr. 556], they were rejected in the *Weiss* case, *supra,* on the ground that plaintiff had "cited no California authority" holding either theory applicable to an attorney's charging lien. In the case at bench, plaintiff alleged he gave actual notice of the existence of the lien to Insurer shortly after his (plaintiff's) discharge by Lyons, and that sometime later, with knowledge of his lien, Insurer paid the sum of $10,000 to Lyons in settlement of the personal injury suit. This appears to be more than simply "disregard of a known lien right" which, if so, renders *Weiss* inapplicable. However, it is unnecessary to so determine for, under existing decisions prior to *Weiss* (September 1975) there was a cause of action for that which is alleged in the fifth cause, good at least as against a general demurrer.

In *Miller* v. *Rau,* 216 Cal.App.2d 68 [30 Cal.Rptr. 612], Rau was given notice by Miller of the latter's interest in certain funds; Rau's alternatives, on being given such notice, "were either (a) commencement of an action in interpleader, or (b) a decision on his (Rau's) own as to whom to distribute the proceeds. He chose the latter course, but in so doing he took the risk of having to pay the person rightfully entitled to the funds if it turned out that the person to whom the distribution was made was not rightfully entitled thereto." (P. 76.) Rau was an attorney who came into control of funds which he knew belonged (at least in part) to Miller but which he turned over to his client. The court held: "Although appellant [Rau] argues that he had a duty to pay the funds to [his client], the correct principle in the factual context of the instant case is expressed in *General Exchange Ins. Corp.* v. *Driscoll, supra,* where the court states ([315 Mass. 360] 52 N.E.2d [970] at p. 973): 'There was nothing in the defendant's status as attorney for [his client] . . . which made it his duty to pay to his client money *which he knew* . . . belonged to plaintiff. [Citations.] The defendant had complete control over the money. It was his duty to hold for the plaintiff so much of the proceeds . . . as represented the plaintiff's known interest in it.' . . . Not only would the *General Exchange Ins. Corp.* rule belie Rau's claim of duty to remit to Aivex, it would impose on him a *positive duty* to hold 25 percent of the net profits for Miller. . . ." This plus additional quotation from *Miller*

was followed in *McCafferty* v. *Gilbank,* 249 Cal.App.2d 569, 576-577 [57 Cal.Rptr. 695]. In *Jones* v. *Martin,* 41 Cal.2d 23 [256 P.2d 905],[2] Mrs. Martin employed Jones as her attorney in recovering damages for personal injuries against a union; the contract provided for a contingent fee and created a lien in favor of Jones who later was wrongfully discharged and one Wellins was substituted as counsel; the damage action was settled and Jones sued Mrs. Martin, the union and Wellins. ■ The Supreme Court quoted with approval, " 'that neither the client nor the opposite party, if the latter has knowledge of the attorney's rights under the contingent fee agreement, can so compromise the litigated subject matter as to defeat the attorney's rights. . .' [Citation.]" (P. 27.) *Jones* v. *Martin, supra,* is cited in *Gostin* v. *State Farm Ins. Co.,* 224 Cal.App.2d 319 [36 Cal.Rptr. 596]: "To this end the law provides that the client's debtor, who has notice of the lien, will not be discharged from his obligation in the premises by subsequent performance rendered to the client, unless the attorney has waived or is estopped to assert his lien. (*Jones* v. *Martin, supra,* 41 Cal.2d 23, 27-28.)" (P. 324.[3]) It is our view that it was error for the court to sustain the general demurrer to the fifth cause of action without leave to amend.

■ In the sixth cause of action, after incorporation of the allegations common to the causes under consideration, plaintiff alleged that Insurer was an involuntary trustee of a constructive trust. Among other remedies acknowledged in *Jones* v. *Martin,* 41 Cal.2d 23 [256 P.2d 905], involving a contingent fee contract, is " 'the imposition of a constructive trust for the protection of the attorney's equitable interest, . . .' [Citation.]" (P. 27.) Appropriate circumstances for such a constructive trust were alleged in the pleading under consideration in *Weiss* v. *Marcus, supra,* 51 Cal.App.3d at page 600. There, plaintiff attorney was employed to represent one Oran under a contingent fee contract and a lien was created; over a year later Oran discharged plaintiff without cause and substituted defendant attorneys who had knowledge of plaintiff's lien; a

---

[2]Overruled in *Fracasse* v. *Brent, supra,* 6 Cal.3d 784, 788-789 and 791, insofar as it held that an attorney, employed under a contingent fee contract and discharged without cause, would be entitled to the full amount provided by the contract instead of the reasonable value of services rendered to the time of his discharge.

[3]Judgment against defendant insurer was reversed in *Gostin* because there was no evidence that plaintiff attorney had performed any services as required by the contingent fee contract creating the lien (in fact the agreement apparently only provided a lien). The case was submitted on stipulated facts, i.e., that facts in the complaint and *not* denied by the answer were true. The trial court found plaintiff had performed services. This was alleged in the complaint but had been denied by the answer and there was no evidence supportive of the trial court's finding.

settlement was reached and the moneys were received by defendant attorneys, part of which were subject to the lien. It was alleged that defendant attorneys acquired and detained this portion in derogation of plaintiff's right to receive the same by virtue of his lien, out of the settlement moneys. The court held that these allegations stated a cause of action for relief in the form of a constructive trust under sections 2223 and 2224 of the Civil Code. However, in *Weiss,* a res existed for support of a trust; in the case at bench no identifiable res appears to exist in the hands of Insurer. While the sixth cause does not state a cause of action for recovery against Insurer as a constructive trustee, it does include the necessary allegations for recovery of damages for the tort of interference with prospective economic advantage. The original complaint did not contain either the fifth cause of action or the sixth cause of action; the latter appeared for the first time in the amended complaint, and the sustaining of the demurrer without leave to amend to this first attempted pleading constituted an abuse of discretion. Under the circumstances it was error to sustain the general demurrer to the sixth cause of action without leave to amend.

As to the whole of plaintiff's claims against it, Insurer advances several additional arguments. It argues that it is the policy of the law to discourage litigation and to favor compromises—voluntary settlements —and to allow a discharged attorney to have a cause of action against an insurance company in such circumstances "will certainly discourage settlements because it will put the insurance company in the middle (and in another lawsuit) whenever an attorney is discharged." Even though the law favors voluntary settlements or compromises, it does not favor the making thereof in derogation of the rights of those having a lien on the moneys or to whom other obligations are owing in connection therewith. ■ Pointing out that when plaintiff was discharged, Lyons was substituted to act in propria persona, Insurer also argues that this made Lyons his own "attorney" and as such Lyons was both client and attorney, and that it rightfully could (indeed was required) to pay all settlement moneys to "attorney" Lyons. It relies on the rights and duties of an attorney under sections 283 and 284, Code of Civil Procedure, and upon *Navrides* v. *Zurich Ins. Co.,* 5 Cal.3d 698, 705 [97 Cal.Rptr. 309, 488 P.2d 637, 49 A.L.R.3d 828], which, after quoting from section 283, stated that it "codifies the well-established proposition of law that an attorney who has authority to settle or collect a claim also has authority to receive payment in money and that such payment to the attorney discharges the claim, even if the attorney absconds with the money. [Citations.]" The

underlying fallacy of respondent's argument is that Mr. Lyons was not and is not an attorney admitted to practice; the provisions of section 283 are concerned with an attorney at law representing a client; and said provisions do not apply to one who is proceeding in propria persona.

Insurer submits that plaintiff seeks recovery of $4,000 which is 40 percent of the $10,000, the percentage provided by the contingent fee retainer agreement, and under *Fracasse* (6 Cal.3d 784), plaintiff is not entitled to the specified percentage of the agreement but only to the reasonable value of services rendered to the time of his discharge. That plaintiff prays for a sum which equals the percentage agreed to in the contingent contract, does not alter the fact that on trial the court would grant the reasonable value of services according to proof. ██ A general demurrer "must not be sustained if the pleading states facts from which any liability results, although not for some or all of the relief sought to be obtained. [Citation.]" (*California Trust Co.* v. *Cohn, supra,* 214 Cal. at page 628.)

Finally, Insurer advances the position that *Fracasse* v. *Brent, supra,* 6 Cal.3d 784, "changed drastically the attorney lien law in California" and that ever since its determination no right or obligation exists against a "debtor's" insurance company. A somewhat similar argument was made and rejected in *Weiss* v. *Marcus, supra,* 51 Cal.App.3d at page 598. The court said in a discussion of *Fracasse* v. *Brent*: " . . . In *Fracasse,* the case did not involve enforcement of an attorney's lien. [¶] Contrary to defendants' contention is the case of *Salopek* v. *Schoemann* (1942) 20 Cal.2d 150, 156 [124 P.2d 21], wherein it was stated that an attorney who has been discharged is entitled to enforce his lien to the extent of the reasonable value of the services performed by him to the date of discharge. This rule was not abrogated in *Fracasse,* either expressly or by implication. (See 6 Cal.3d at p. 789.)" Remedies for enforcement of the attorney's lien were not abrogated or changed by *Fracasse.*

The claim that plaintiff nowhere alleged the performance by him of any services, reiterated herein by Insurer is without merit. As against the general demurrer, paragraph 12 of the amended complaint suffices in this regard. Even were this not correct, it would be improper to sustain the general demurrer to the first amended complaint (which for the first time contained allegations by plaintiff of the fifth and sixth causes of

action) without leave to amend, if this were the objection on which the ruling was being based.

The judgment (orders of partial dismissal of August 28, 1975, and September 10, 1975) is reversed.

Wood, P. J., and Hanson, J., concurred.