In the Matter of Jack J. GRYNBERG, a/k/a Jack Jakob Grynberg, a/k/a Jack Grynberg, d/b/a Jack Grynberg and Associates d/b/a Jack Grynberg & Associates and Celeste C. Grynberg, a/k/a Celeste Constance Grynberg, a/k/a Celeste Grynberg, Debtors/Appellants,

v.

BANCROFT, AVERY, AND McALISTER and Creditors' Committee, Claimants/Appellees.

Civ. A. Nos. 82–F–487 (81 B 00821M), 82–F–488 (81 B 00825M).

United States District Court, D. Colorado.

Feb. 1, 1983.

Affirmed, 10th Cir., 758 F.2d 1398.

Neil E. Ayervais, Lohf & Barnhill, Denver, Colo., for debtor/appellant Jack J. Grynberg.

Jeffrey L. Beattie, Law & Scheid, Denver, Colo., for debtor/appellant Celeste C. Grynberg.

James C. Ruh, Jensen, Bryne, Parsons & Ruh, Denver, Colo., Sandra J. Shapiro, Bancroft, Avery & McAlister, San Francisco, Cal., for claimants/appellees Bancroft, Avery and McAlister.

Harry M. Sterling, Sterling & Simon, Denver, Colo., for claimant/appellee Creditors' Committee.

## MEMORANDUM OPINION AND ORDER

SHERMAN G. FINESILVER, Chief Judge.

In this appeal, the appellants, Jack and Celeste Grynberg (Grynbergs), seek review of an Order of the Bankruptcy Court dated January 5, 1982. That Order approved a settlement of claims between the Grynbergs and certain parties to a class action judgment against the Grynbergs. While the Order gave approval to the settlement itself, the Bankruptcy Court Order required that the attorneys' fees owed on the portion of the judgment settled be paid before the Grynbergs could withdraw certain funds held in escrow as security for the judgment.

The Court has carefully reviewed the record on appeal, including the transcript and exhibits from the bankruptcy proceeding, as well as the arguments of counsel at the hearing held on this matter. Upon due consideration of the record, briefs submitted, and oral argument heard, we conclude that the Order of the Bankruptcy Court should be AFFIRMED.

### I. *Factual Background*

In December of 1980 the Superior Court for the County of Alameda, State of California, in a class action involving the Grynbergs as named defendants, found that the Grynbergs made intentional false representations and failed to disclose material information when soliciting the plaintiff class members to invest in a limited partnership transaction. The Court entered a judgment against the Grynbergs and in favor of the class in an amount in excess of $6,700,-000. The Judgment set forth the pro rata share owed to each class member. Thereafter, the Grynbergs filed an appeal of the judgment.

In January of 1981 the California Court awarded the attorneys for the plaintiff class, Bancroft, Avery and McAlister, approximately $100,000 in costs and $1,587,-000 in attorneys' fees for the work done in representing the class. That order specifically stated that the attorneys' fees and costs were to be paid out of the first monies recovered on the judgment and that fees were to be assessed against each class member on a pro rata basis based on the portion of the judgment owed each class member. Philip Seltzer, a member of the class, was allocated approximately $98,000 out of the overall judgment. Francis Cannon, another class member was allocated approximately $75,000. Joshua Freedman, a third class member, was allocated approximately $65,000. While the Grynbergs appealed the December 1980 judgment entered against them, neither they nor the class members appealed from the allocation established by the California Court or the award of attorneys' fees and costs.

In February of 1981, the Grynbergs filed voluntary petitions in bankruptcy under Chapter 11 of the United States Bankruptcy Code. This was in the Bankruptcy Court for the District of Colorado. Sometime during early 1981 the plaintiff class from the California judgment filed various *lis pendens* and judgment liens against Grynberg property in Colorado and the surrounding states. Because of these encumbrances on the property the Grynbergs

were unable to carry out operations on the properties or to transact business with regard to these properties. Apparently, this was the immediate cause for the Grynbergs seeking protection under Chapter 11 of the Bankruptcy Code.

In an Order dated September 22, 1981, the Bankruptcy Court authorized the Grynbergs to substitute $7,150,000 as security for the California judgment in return for the release and removal of all *lis pendens* and liens on Grynberg property recorded by the plaintiff class. The Bankruptcy Court determined that this arrangement provided adequate protection for the claims of the plaintiff class in lieu of the liens on the property of the debtor. The $7,150,000 represented the amount of the California judgment plus interest at the legal rate in accordance with California law.

In October of 1981 the Grynbergs entered into a settlement agreement with Philip Seltzer, a member of the plaintiff class in the California litigation. Evidently, Mr. Seltzer had been "assigned" the rights of two other class members, Mssrs. Cannon and Freedman, sometime after entry of judgment in California. The settlement agreement provided that Mr. Seltzer would release his claim under the California judgment as well as those claims assigned him. In addition Mr. Seltzer agreed to pay the Grynbergs a certain amount in cash and transfer certain property rights to the Grynbergs. In return Mr. Grynberg agreed to release Mr. Seltzer and his brother Nathan Seltzer from a judgment entered against the Seltzers in favor of Mr. Grynberg in the United States District Court for the District of Colorado in April of 1978. The Grynberg judgment against the Seltzers was final and non-appealable.

On October 29, 1981 the Grynbergs filed applications for approval of the settlement agreement with the Bankruptcy Court. As part of the application for approval, the Grynbergs sought to withdraw from the funds held in escrow as security for the California judgment the amount equivalent to the three claims held by Mr. Seltzer. This was approximately $266,000. In No-

vember of 1981 counsel for the plaintiff class, Bancroft, Avery and McAlister (Bancroft) filed a partial objection to the application for approval of settlement. Bancroft stated that they had no objection to the settlement itself, but they did object to the withdrawal of the funds from the escrow account without provision for payment of the pro rata share of attorneys' fees owed on the portion of the California judgment involved in the settlement. Based on the January Order of the California Court, approximately $70,000 in attorneys' fees and costs would have been owed on the $266,000 portion of the overall judgment. Bancroft sought either to have that amount paid or that amount left in the escrow account. Both the debtors and Mr. Seltzer argued that to require payment or to reduce the amount allowed to be withdrawn would be improper. On January 5, 1982, the Bankruptcy Court approved the terms of the settlement agreement, but prohibited the funds to be withdrawn from the escrow account until the Bancroft lien was satisfied. From this Order the Grynbergs appeal.

## II.

■ At the outset we note that, under California law, Bancroft has a valid protectable interest in the judgment entered in favor of the plaintiff class. This interest was in the form of an equitable lien in the December, 1980 judgment, *Winslow v. Harold G. Ferguson Corp.*, 25 Cal.2d 274, 153 P.2d 714 (1944). From the record and the briefs submitted by the appellants it does not appear that this issue is seriously contested.

What is central to this appeal is the impact or effect that the settlement agreement between the Grynbergs and Mr. Seltzer had on the Bancroft lien. That issue in turn is dependent upon how the arrangement between the Grynbergs and Mr. Seltzer is classified. Appellants argue that the October 1981 settlement agreement amounted to a setoff of mutual debts pursuant to § 553 of the United States Bankruptcy Code. Appellants then state that

the Bankruptcy Court improperly applied Colorado law in determining the effect of such a setoff on the Bancroft lien. Had the Bankruptcy Court applied correct law, that is the law of California as they see it, the setoff for a variety of reasons would have been superior to the lien of Bancroft.

■ Appellees, on the other hand, argue that the October 1981 settlement was not a setoff under § 553. Appellees contend that if no setoff took place then what occurred was simply a partial settlement of the California litigation between the defendants thereto and several of the plaintiff class members. Such a settlement, argue the appellees cannot affect their rights to the attorneys' fees awarded to them by the California Court. Appellees also argue that even if a setoff took place the applicable law in Colorado *or* California would not work to place the Bancroft lien in an inferior position to the setoff.

The first issue that must be resolved by this Court is the effect to be given to the October, 1981 settlement between the Grynbergs and Philip Seltzer. We are of the view that what took place was *not* a setoff within the meaning of § 553 of the Bankruptcy Code or non-bankruptcy law. Initially, we look to the October, 1981 agreement itself. That document (Record at 1, exhibit # 1) by its very terms involves much more than a simple setoff of one claim or debt against another. The judgment that the Grynbergs obtained in April of 1978 was against *both* Philip and Nathan Seltzer. The judgment against the Grynbergs in California, which they seek to have setoff by the 1978 judgment, was in favor of Philip Seltzer only. Nathan Seltzer was not a member of the plaintiff class; yet the October, 1981 settlement agreement involves both judgments despite the fact that the parties to those judgments are not the same. In addition, the settlement agreement involves not only Philip Seltzer's pro rata share of the California judgment, but those shares of two other class members, Mssrs. Cannon and Freedman. Finally, the settlement agreement worked out between the parties involved much more than just the two judgments. Mr. Seltzer agreed to pay the Grynbergs $150,-000 in cash in addition to releasing his claims under the California judgment. Mr. Seltzer also agreed to transfer certain property rights to the Grynbergs. The October, 1981 agreement also acted to release the Seltzers from

> [a]ny and all claims, suits, and judgments which have, or may or can arise from any and all transactions entered into heretofore among Jack J. Grynberg ... The said Jack J. Grynberg in said document shall further indemnify and hold harmless Philip Seltzer ... from any and all claims, suits and judgments out of any transaction entered into heretofore among Jack J. Grynberg, ... and Philip Seltzer and/or Nathan Seltzer or any member of their family.

This language alone suggests that more than just the two judgments were being resolved by way of the October, 1981 agreement.

We are of the view that the facts as described above destroy the mutuality necessary to characterize the October, 1981 agreement as a setoff within the meaning of § 553 of the United States Bankruptcy Code. To be mutual, the debts "must be in the same right and between the same parties, standing in the same capacity." 4 *Collier on Bankruptcy* ¶ 553.04[3]; pp. 553–22 (15th ed., 1981). "[F]or mutuality to exist, each must own his claim in his own right severally, with the right to collect it in his own name against the debtor in his own right and severally. A joint debt cannot be set off against a separate debt ..." 4 *Collier on Bankruptcy* ¶ 553.04[4]; pp. 553–30 (15th ed., 1981). The settlement agreement involves persons not common to both judgments. The agreement also purports to resolve other matters besides the two competing judgments. In addition, the full face value of the California judgment against the Grynbergs did not form the basis of the setoff. Instead the parties to the October, 1981 agreement apparently reduced the value of the December, 1980 judgment to reflect the

fact that it was on appeal and might be modified or reversed. While such a procedure is entirely proper between parties attempting to *settle* a dispute between them, it is entirely inconsistent with the notion of setoff. Until the December, 1980 judgment is altered or reversed, its value for purposes of setoff is the face amount. Under these circumstances, we think it is plain that no setoff took place. Instead, the parties attempted to negotiate a settlement of their respective claims.

A negotiated settlement is not the legal equivalent of a setoff under § 553 of the Bankruptcy Code. Similarly, a negotiated settlement will have a different impact on the rights of the attorney with an equitable interest in the judgment. We do not believe that the Bankruptcy Court intended to classify the settlement agreement between the parties as a true setoff. The January 5, 1982 Order of the Bankruptcy Court never refers to § 553 of the Bankruptcy Code. While the Order does describe the settlement as effectively resulting in a setoff, it is our view that the Order of the Bankruptcy Court, when read as a whole, amounts to a partial approval of a negotiated settlement among the parties.

■ Appellants contend that the Bankruptcy Code does not require the debtor in possession or the trustee in bankruptcy to satisfy the requirements of § 553(a) in order to invoke a setoff against the claims of a creditor against the estate. Appellants have cited case law in support of the position that, as to the debtor, setoff under § 553 is a matter of right and should be thought of as a defense available to the representative of the estate pursuant to § 541(e) of the Code, *Matter of McGuire*, 11 B.R. 649 (Bkptcy., W.D.Pa., 1981); *In Re Standard Furniture Co.*, 3 B.R. 527 (Bkptcy., S.D.Cal., 1980). While the restrictions applied under § 553(a) may not apply to the representative of the estate who asserts a setoff as a defense to a claim against the estate, that is not what took place here. While the Grynbergs may have had a defense against the claims held by Mr. Seltzer, the parties were not free to negotiate the value of Mr. Seltzer's claims and still contend that a defense under § 541(e) was being asserted. Mr. Seltzer could not unilaterally reduce the amount of his claim without considering the interest Bancroft had in that claim by virtue of the California Court Order. Under either § 553 or § 541(e) the value of the Seltzer claims would have to be based on the full amount of the overall class judgment. Mr. Seltzer's share, coupled with those of Mssrs. Freedman and Cannon, came to something in excess of $260,000. It is clear that had the parties been negotiating based on this amount as the presumed value of Mr. Seltzer's claims, a different arrangement would have resulted. It is our view that what took place between the parties to the settlement was not a setoff under § 553 nor the assertion of a defense pursuant to § 541(e) of the Bankruptcy Code. What occurred was exactly what the parties referred to it as; a negotiated settlement of various claims the parties had against each other.

### III.

■ We must next determine what effect, if any, the 1981 settlement agreement had on the rights of Bancroft as counsel for the plaintiff class. The appellants have argued that the Bankruptcy Court erred when it applied Colorado law to the facts of this case. Appellants contend that California law controls the rights of Bancroft in the California judgment by way of the equitable lien. We agree. *See Donaldson, Hoffman & Goldstein v. Gaudio*, 260 F.2d 333, 335 (10th Cir., 1958). Under California law the client cannot, by settling his claim directly with the opposing party, defeat the attorneys' rights, *Jones v. Martin*, 41 Cal.2d 23, 256 P.2d 905 (1953). Although *Jones, supra,* a California Supreme Court case, dealt with a situation involving a contingent fee arrangement, we are of the view that where, as here, the Court has made a specific award of attorneys' fees, the rationale of *Jones* would work to prohibit a class member from settling his claim in a way that would jeopardize the

award of attorneys' fees to Bancroft. The law in other jurisdictions supports the view that, while the client has the right to make a settlement of his claim directly with the opposing party, he cannot deprive the attorney of his fee, See, *Katopodis v. Liberian S/T Olympic Sun*, 282 F.Supp. 369 (E.D.Va., 1968). While the case law is not perfectly clear on this point, it is our view that in this case the client cannot settle the case in such a way as to reduce the attorney fee award granted by a court order. In the case before us, the California Court did more than simply say that Bancroft was entitled to a "fair" amount of attorneys' fees. The Court quantified the amount and made it a part of the order dividing the judgment among the class members. It is our view that any agreement or settlement that resulted in a reduction in the attorneys' fees payable from the first funds distributed would be in direct violation of the January 19, 1981 California Court Order.

### IV.

While it is the determination of this Court that no setoff took place, had a setoff in fact occurred we would, nevertheless, affirm the Order of the Bankruptcy Court. The appellants contend that, under California law, the right of a party to setoff takes precedence over any lien on the judgment held by an attorney, *Salaman v. Bolt*, 74 Cal.App.3d 907, 141 Cal.Rptr. 841 (1977); *Margott v. Gem Properties, Inc.*, 34 Cal.App.3d 849, 111 Cal.Rptr. 1 (1973). The cases cited do support that general proposition, but they do not address the situation presented by the instant case. In the case before us the judgment was awarded to the class as a separate entity. Similarly, the award of attorneys' fees was based on the work done by Bancroft for the class. In essence *the class* was obligated to pay the attorneys' fees. Only after the California Court awarded Bancroft their fees did the Court dictate how that award was to be paid by the class members. We do not believe that the Grynbergs had anything to setoff against the class as an entity. Therefore any setoff *vis a vis* Mr.

Seltzer's portion of the judgment could only reflect his share *after* the attorneys' fees were paid or at least accounted for in some way. Mr. Seltzer did not have $266,000 to setoff against the judgment in favor of the Grynbergs. Instead what was subject to setoff was $266,000 reduced by the pro rata portion of the attorneys' fees *the class* owed on that amount. It is the opinion of this Court that the January 19, 1981 California Court Order granted Bancroft a separate protectable interest in the overall judgment. The security for the judgment deposited by the Grynbergs secured not only the claims of the individual class members, but also the separate interest held by Bancroft. If the California judgment is ultimately affirmed, Bancroft will be owed approximately $1,500,000 by the class. That amount is secured by the escrow account deposited by the Grynbergs just as the claims of the individual class members are secured. The Order of the California Court in effect awarded Mssrs. Seltzer, Cannon and Freedman approximately $196,000 ($266,000—$70,000). If there was anything to setoff against the judgment the Grynbergs had against Mr. Seltzer it was this amount *only*.

We could find no case law which directly addressed the interaction of a setoff claim against that portion of a class judgment owed to an individual class member. Nevertheless, it is our view that the rationale described above is the only result consistent with the purpose behind class actions. As the California Supreme Court has stated, the attorney for a successful plaintiff group involved in a class action is permitted to obtain his fee by "surcharging the common fund" to encourage the attorney for the successful litigant ...

> who will be more willing to undertake diligently prosecute proper litigation for the protection or recovery of the fund if he is assured that he will be promptly and directly compensated should his efforts be successful. *In Re Stauffer's Estate*, [53 Cal.2d 124], 346 P.2d 748, 753 (1959).

If the Grynbergs were permitted to withdraw the full $266,000 from the escrow account the incentive to bring class actions on the part of attorneys like Bancroft would be reduced. Either the remaining class members would become obligated to pay a greater share of the fee award or the class attorney must commence a separate action against the class member who receives the benefit of the representation without reimbursing the attorney for his work done on behalf of the class. In either case, the salutory purpose and effect of a class action would be impaired. We do not believe that the California Courts, if faced with such a situation, would permit such a result to occur.

Finally, we believe that the position of the appellants is undercut further by a case cited in support of their contentions. In *Salaman, supra* the Court stated

> Among non-party lien claimants, the basic rule is well established that they have priority according to the time of the orders creating their liens, other things being equal. However, the general intendment of the cases, as we read them, is that as between a statutory lien and a right of equitable offset, things are not equal and the offset is given an equitable preference. *Salaman, supra* at 846.

We are of the view that Bancroft has an *equitable* rather than a statutory interest in the judgment in favor of the class. Further, we believe that the equitable interest held by Bancroft arose when they initially began the class action against the Grynbergs. The California Court Order awarding attorneys' fees states that the action was commenced six years prior to the award of attorneys' fees. This would place the creation of the Bancroft interest *well before* the date of the judgment the Grynbergs obtained against Mr. Seltzer. What we have then are two competing equitable interests with the Bancroft interest preceding the interest held by the Grynbergs. That being the case, the holding in *Salaman* as well as general principles of equity would support a determination that the Bancroft interest is superior. As the Court in *Salaman* stated, the ability to order the

setoff "rests upon the inherent power of the Court to do justice to the parties before it." In the instant case, justice requires that the attorneys' fees awarded to Bancroft, the attorneys for the plaintiff class, not be jeopardized by a setoff between the defendant in the class action and one of the class members. The equities in the case lie with the appellees.

## ORDER

The Order of the Bankruptcy Court dated January 5, 1982 is hereby AFFIRMED.