[No. B108279. Second Dist., Div. Four. Sept. 23, 1997.]

ALAN EPSTEIN et al., Plaintiffs and Respondents, v.
STEVEN G. ABRAMS et al., Defendants;
LAWRENCE M. LEBOWSKY, Claimant and Appellant.

**COUNSEL**

Lawrence M. Lebowsky, in pro. per., Fernando D. Vargas and Martin L. Horwitz for Claimant and Appellant.

Dichter, Spector & Karpel, Donald E. Karpel and John C. Teal, Jr., for Plaintiffs and Respondents.

## OPINION

### VOGEL (C. S.), P. J.—

#### INTRODUCTION

Appellant Lawrence M. Lebowsky was the attorney of record for defendants and cross-complainants Steven G. Abrams, Alan Abrams (Steven's son), and Abrams Veterinary Corporation, in the present action brought by plaintiffs and respondents Alan Epstein, and Devonshire Veterinary Clinic, Inc. Appellant was successful in obtaining summary judgment on behalf of Alan Abrams and in securing an award of attorney fees in Alan Abrams's favor; Alan Abrams was dismissed from the lawsuit. The action proceeded between the remaining Abrams defendants and the plaintiffs. After appellant filed and served notice of his contractual attorney's lien, the remaining litigants and Alan Abrams attempted to enter into a global settlement agreement, a necessary component of which was Alan Abrams's agreement to execute a satisfaction of the judgment in his favor for attorney fees and costs. Respondents brought a motion in the trial court seeking court approval of the settlement, and the trial court issued an order granting the motion. The trial court later denied appellant's motion for reconsideration of the order. Appellant appeals from these orders, contending that the trial court acted in excess of its jurisdiction in approving the settlement. We agree that the trial court's orders were in error and reverse.

#### FACTUAL AND PROCEDURAL BACKGROUND

Respondents filed the present action for breach of a noncompetition agreement which formed a part of a sales agreement of a veterinary practice by respondents to defendants. The defendants cross-complained against respondents.

Appellant, representing all of the Abrams defendants and cross-complainants, filed on behalf of Alan Abrams a successful motion for summary judgment. As a result, judgment for attorney fees and costs was awarded in favor of Alan Abrams[1] on February 21, 1996, and Alan Abrams was dismissed from the lawsuit. The action proceeded between respondents and the remaining Abrams defendants.

On June 27, 1996, after reviewing appellant's time records and other relevant documents, the trial court fixed the amount of attorney fees and

---

[1] Attorney fees and costs were awarded pursuant to Civil Code section 1717, subdivision (a), and Code of Civil Procedure section 1033.5, subdivision (a)(10)(A).

All further statutory references are to the Code of Civil Procedure.

costs at $75,671.75. Respondents filed an appeal from the court's order fixing the amount of fees on August 2, 1996.

On July 29, 1996, as authorized by Alan Abrams, appellant levied on respondents' bank accounts and safe deposit box, securing some $32,000 and other personal property. However, Alan Abrams refused to pay over any attorney fees to appellant.

Appellant thereafter withdrew on motion as counsel for the remaining Abrams defendants.

On August 11, 1996, appellant served all parties with an attorney's notice of lien against the attorney fee judgment. The notice of lien was filed August 12, 1996.

Alan Abrams then released the levy on respondents' assets. Respondents also released a cash collateral bond which secured a judgment in a prior related case which was owed by the Abrams to the respondents.

On August 19, 1996, appellant obtained an ex parte order pursuant to section 708.440 staying any compromise, settlement, dismissal, or satisfaction of the separate attorney fee judgment, and staying any transfer of property subject to that judgment. However, respondents took back the money and property levied on by appellant for Alan Abrams. In response, appellant obtained another ex parte order, again pursuant to section 708.440, authorizing enforcement of the attorney fee judgment, with the proceeds to be paid into court, and ordering respondents to return and pay into court the levied money and property. Appellant also scheduled a judgment debtor examination of respondents for October 7, 1996, and scheduled for October 4, 1996, a motion to enforce the liability of the bank for improperly releasing the levied money and property.

On September 9, 1996, appellant filed a separate action against Alan Abrams and others, Lebowsky v. Abrams, Superior Court of Los Angeles County, 1996, No. PC018112Z, for the purpose of enforcing his attorney fee lien against Alan Abrams's final judgment for attorney fees. A first amended complaint was filed on October 16, 1996.

On September 10, 1996, respondents abandoned their appeal of the order fixing the amount of attorney fees. Respondents also filed on September 10, 1996, a motion pursuant to section 708.440 for an order approving a settlement agreement, whereby respondents would dismiss the pending action against the remaining Abrams defendants, and Alan Abrams would release the judgment for attorney fees against respondents.

On September 16, 1996, respondents filed an ex parte application asking the trial court to vacate the orders previously entered pursuant to section 708.440. That application was denied. Respondents then filed a petition for writ of mandate in this court, asking that the section 708.440 orders be vacated. This court granted an alternative writ and issued a temporary stay order on October 1, 1996, directing the trial court either to vacate its August 19, September 6, and September 16 orders, or to show cause why a peremptory writ of mandate ordering the trial court to do so should not issue. We also stayed in force and effect the above orders until further order of this court.

Apparently before receiving notice of this court's alternative writ and temporary stay order, appellant filed on October 2, 1996, opposition to respondents' motion for an order approving the settlement agreement.

On October 4, 1996, the trial court in appellant's independent action granted appellant a right to attach order against the final judgment for attorney fees in the present case, and appellant served notice of attachment lien and the right to attach order on all interested parties, including the trial court in the present case. On October 9, 1996, a writ of attachment was ordered to be issued upon the filing of an undertaking.

The trial court placed off calendar the judgment debtor examination scheduled for October 7, 1996, as well as the motion for an order to enforce the bank's liability for releasing the levied money and property scheduled for October 4, 1996. However, the court left on calendar respondents' motion for an order approving the settlement agreement. On October 7, 1996, the trial court complied with this court's alternative writ and vacated its August 19, September 6, and September 16, 1996, orders.

Over appellant's opposition, on October 9, 1996, the trial court in the present action granted respondents' motion under section 708.440 to compromise the pending action, which compromise included Alan Abrams's agreement to execute a satisfaction of the judgment in his favor for attorney fees and costs. A satisfaction of the judgment was filed the same day.

Appellant filed on October 21, 1996, a motion for reconsideration of the trial court's order approving the compromise, asking the court to vacate that order as well as the satisfaction of judgment, and to stay enforcement of the trial court's order. Respondents filed opposition to that motion, and appellant filed a reply. The trial court denied appellant's motion on November 18,

1996. Appellant timely filed a notice of appeal as to the October 9 and November 18, 1996, orders.[2]

DISCUSSION

I.

*The Validity of Appellant's Attorney's Lien Is Not an Issue*
*Before This Court*

■    We first dispose of respondents' contention that this appeal must fail because appellant did not have a valid contractual attorney's lien.[3] This matter is before us on appeal from the trial court's order approving settlement of the action in which appellant represented the Abrams defendants. As appellant points out, the trial court whose orders we consider had no jurisdiction to determine the validity or enforceability of the attorney's lien. While appellant was entitled to file a lien in the present action, it is clear that appellant was not a party to the present action and was therefore required to bring an independent action to establish the existence and amount of his lien and to enforce it. (*Valenta* v. *Regents of University of California* (1991) 231 Cal.App.3d 1465, 1470 [282 Cal.Rptr. 812]; *Hansen* v. *Jacobsen, supra,* 186 Cal.App.3d at p. 356.) Appellant has complied with this requirement and the issue of the validity of appellant's attorney's lien is not properly before us. That issue remains to be determined in appellant's independent action.

II.

*The Trial Court's Order Approving the Settlement Pursuant to the*
*Judgment Lien Statutes (§ 708.410 et seq.) Was in Error*

■    The trial court's orders which are challenged here purported to approve the settlement of the present action pursuant to the judgment lien statutes, section 708.410 et seq., and specifically section 708.440. However, "[t]he section by its terms relates only to liens of judgment creditors." It does not apply to contractually created attorney's liens; "the purpose of the

---

[2]Appellant filed a petition for writ of mandate on January 13, 1997, contesting the trial court's orders of October 9 and November 18, 1996, which this court denied for failure to demonstrate entitlement to extraordinary relief. (*Lebowsky* v. *Superior Court* (Feb. 26, 1997) B108610 [nonpub. opn.].)

[3]A lien in favor of an attorney upon the proceeds of a prospective judgment in favor of his or her client for legal services may be created either by express contract, or it may be implied if the retainer agreement between the attorney and client indicates that the former is to look to the judgment for payment of his or her fee. (*Hansen* v. *Jacobsen* (1986) 186 Cal.App.3d 350, 355 [230 Cal.Rptr. 580], citing *Cetenko* v. *United California Bank* (1982) 30 Cal.3d 528, 531 [179 Cal.Rptr. 902, 638 P.2d 1299, 34 A.L.R.4th 657].)

section is unrelated to liens created by contract." (*Cetenko* v. *United California Bank, supra,* 30 Cal.3d at p. 533, referring to § 688.1, the predecessor statute to § 708.440.) " '[T]he rule [is] that the [judgment lien] statutes (Code Civ. Proc., [§ 708.410 et seq.]) are subject to strict construction because they are purely the creation of the Legislature.' (*Vershbow* v. *Reiner* (1991) 231 Cal.App.3d 879, 882 . . . .) Thus, ' ". . . where a statute requires a court to exercise its jurisdiction in a particular manner, follow a particular procedure, or subject to certain limitations, an act beyond those limits is in excess of its jurisdiction" and void.' (*Id.* at p. 883.)" (*Jordan-Lyon Productions, Ltd.* v. *Cineplex Odeon Corp.* (1994) 29 Cal.App.4th 1459, 1466 [35 Cal.Rptr.2d 200] [referring to the attachment law statutes].)

Indeed, when we issued an alternative writ of mandate in October 1996 (*Epstein* v. *Superior Court,* B105606), we did so because the trial court exceeded its jurisdiction by purporting to grant a stay of settlement and take other related actions pursuant to section 708.410 et seq. Similarly, the challenged order of the trial court, approving the settlement pursuant to section 708.440, exceeded the trial court's jurisdiction, and must be reversed.

### III.

*The Trial Court Did Not Have Authority to Approve the Settlement*
*Pursuant to the Attachment Lien Statutes (§ 491.410 et seq.)*

As noted previously, the trial court in appellant's independent action granted appellant a right to attach order against the final judgment for attorney fees in the present case, appellant served notice of the attachment lien on all interested parties, and a writ of attachment was issued by the trial court in the independent action which was lodged with the trial court in the present action. Respondents argue on appeal that, given these circumstances, the trial court had jurisdiction to enter an order approving the settlement agreement pursuant to the attachment lien statutes. (See § 491.440, which contains language comparable to § 708.440, the statute upon which the trial court relied in approving the settlement.) We disagree.

Although appellant did obtain a right to attach order and a writ of attachment from the court in his independent action (see § 485.010 et seq. [ex parte procedures]), and he so notified the trial court in the present action, he could not rely on the remedies found in chapter 11 ("attaching plaintiff's miscellaneous remedies"), article 3 ("lien in pending action or proceeding"),

sections 491.410 to 491.470.[4] Article 3 provides that where a defendant (in an independent action, in this case Alan Abrams) is a party to a separate *pending action* (in this case theoretically the present action), the plaintiff (in the independent action, in this case appellant Lebowsky) may obtain a lien under this article against any judgment procured by the defendant (Alan Abrams) in the other action in order to secure the amount of plaintiff's attachment. In this case, there was no *pending* action in which appellant obtained a lien against a *potential* judgment in favor of Alan Abrams; the judgment in favor of Alan Abrams was already final at the time appellant sought and obtained his attachment lien. Section 491.410, subdivisions (a) and (d) specifically limit the remedy provided thereunder to pending actions. Specifically, section 491.410, subdivision (d), provides that "[f]or the purpose of this article, an action or special proceeding is pending until the time for appeal from the judgment has expired or, if an appeal is filed, until the appeal has been finally determined." We again note that The Attachment Law statutes are subject to strict construction, and where a court is required to exercise its jurisdiction in a particular manner or subject to certain limitations, an act beyond those limits is in excess of its jurisdiction and void. (*Jordan-Lyon Productions, Ltd.* v. *Cineplex Odeon Corp., supra*, 29 Cal.App.4th at p. 1466.)

Thus, the trial court could not have alternatively relied on article 3, section 491.440 et seq., and specifically section 491.440, subdivision (b), as giving it jurisdiction to approve the settlement.[5] The trial court in this case did not have jurisdiction statutorily conferred upon it by which it could grant approval of the settlement at issue. By any view, the trial court exceeded its jurisdiction by making the challenged order approving the settlement.

In any event, as we next discuss, even if the trial court did have either statutory jurisdiction or the inherent authority to approve the settlement,

[4]Section 491.410 provides "(a) If the defendant is a party to a pending action or special proceeding, the plaintiff may obtain a lien under this article, to the extent required to secure the amount to be secured by the attachment, on both of the following: [¶] (1) Any cause of action of the defendant for money or property that is the subject of the other action or proceeding, if the money or property would be subject to attachment if the defendant prevails in the action or proceedings. [¶] (2) The rights of the defendant to money or property under any judgment subsequently procured in the other action or proceeding, if the money or property would be subject to attachment. [¶] (b) To obtain a lien under this article, the plaintiff shall file all of the following in the other pending action or special proceeding: [¶] (1) A notice of lien. [¶] (2) A copy of the right to attach order. [¶] (3) A copy of an order permitting creation of a lien under this article made by the court that issued the right to attach order."

[5]That is not to say that appellant did not have a valid attachment lien; rather, he apparently did have a valid attachment lien which he sought to recover by way of his independent creditor's suit. (See ch. 11, art. 2, § 491.310 et seq.)

which we hold it did not, it would have been an abuse of discretion for the trial court to do so.

## IV.

### *A Settlement Is Not Entitled to Court Approval Where It Constitutes an Attempt to Defeat an Existing Attorney's Lien*

■ "It is settled in California that an attorney's lien against the prospective recovery of a client upon his claim, to secure the payment of a contingency fee for services to be rendered in connection therewith,[6] may be created by contract[] (*Haupt* v. *Charlie's Kosher Market* [(1941)] 17 Cal.2d 843, 845 . . . ; [citations])[;] . . . [is] a charging lien [citation]; . . . constitut[es] an equitable assignment *pro tanto* of the client's claim and his right to recover thereon as security (*Haupt* v. *Charlie's Kosher Market, supra,* 17 Cal.2d 843, 845; [citation]); . . . vest[s] in the attorney an equitable interest in the client's recovery as security (*Jones* v. *Martin* [(1953)] 41 Cal.2d 23, 27 . . .); or, more correctly stated, . . . entitl[es] the attorney to any available equitable remedy necessary to effect payment of his fee for services rendered in connection with his client's claim out of any recovery upon that claim. (*City of Los Angeles* v. *Knapp* [(1936)] 7 Cal.2d 168, 174 . . . ; [citation].)" (*Gostin* v. *State Farm Ins. Co.* (1964) 224 Cal.App.2d 319, 323-324 [36 Cal.Rptr. 596].)

An attorney's lien is " 'an equitable right to have the fees and costs due to him for services in a suit secured to him out of the judgment or recovery in the particular action, the attorney to the extent of such services being regarded as an equitable assignee of the judgment. It is based, as in the case of a lien proper, on the natural equity that a party should not be allowed to appropriate the whole of a judgment in his favor without paying for the services of his attorney in obtaining such judgment.' . . . (*Tracy* v. *Ringole* (1927) . . . 87 Cal.App. 549, 551 . . . .)" (*Isrin* v. *Superior Court* (1965) 63

---

[6]For purposes of this appeal, we assume that appellant had entered into a contractual agreement of some form with Alan Abrams, by which he was entitled to be paid for his services out of the proceeds of any recovery. In referring to "contingency fee" agreements, the cases cited in this section of our decision do not exclude from the category of valid attorney's liens those liens based on agreements whereby an attorney is to be paid for his services on an hourly basis rather than based on a traditional "contingency fee" agreement by which the attorney is entitled to be paid a percentage of any recovery. An attorney's lien may also be created based on an agreement to pay an attorney an hourly fee for his or services. (See *Cetenko* v. *United California Bank, supra,* 30 Cal.3d at pp. 531-532.)

As stated previously, the existence of a contractual fee agreement and of a resulting attorney's lien are matters to be determined in appellant's independent action.

Cal.2d 153, 158-159 [45 Cal.Rptr. 320, 403 P.2d 728], italics omitted; see also *Siciliano* v. *Fireman's Fund Ins. Co.* (1976) 62 Cal.App.3d 745, 752 [133 Cal.Rptr. 376].) ██ By attempting to enter into the settlement agreement as he did, Alan Abrams in effect appropriated the whole of the judgment in his favor, for his own benefit, in order to settle the lawsuit in which his father remained a defendant and to foreclose any possibility of future liability on his part, without paying his attorney for services rendered in obtaining the judgment. Such an act is plainly undeserving of court approval.

Furthermore, it was improper—and unwise—for respondents on their part to attempt to enter into such a settlement agreement. ██ " 'A contingent fee agreement vests the attorney with an equitable interest in that part of the client's cause of action which is agreed upon as the contingent fee. This proposition may be given practical effect by the imposition of a constructive trust for the protection of the attorney's equitable interest, by acknowledging the existence of an express trust created by the contingent fee agreement in favor of the attorney, or by ruling that *neither the client nor the opposite party, if the latter has knowledge of the attorney's rights under the contingent fee agreement, can so compromise the litigated subject matter as to defeat the attorney's rights. . . .'* (6 Cal.Jur.2d, Attorneys at Law, § 192.) *It is also true that a debtor will not be discharged from his obligations by performance rendered to the assignor after notice of the assignment.* [Citations.]" (*Jones* v. *Martin* (1953) 41 Cal.2d 23, 27-28 [256 P.2d 905], italics added); see also *Siciliano* v. *Fireman's Fund Ins. Co., supra,* 62 Cal.App.3d at p. 757.) ██ Thus, respondents as debtors would not be discharged from their obligation to pay the judgment based on Alan Abrams's execution of a satisfaction of judgment, where, as here, respondents had notice of appellant's attorney's lien.

## V.

*The Validity and Possible Enforcement of Appellant's Attorney's Lien or Alternatively His Attachment Lien Remain to Be Determined in the Independent Action*

In reversing the challenged order of the trial court purporting to approve the settlement, we emphasize that appellant is entitled to attempt, by way of his independent action, to establish the existence of an attorney's lien and/or the validity of his attachment lien. Enforcement of any lien found to exist must also take place in that forum. The present attempt by respondents and the defendants to defeat appellant's lien must fail.

## DISPOSITION

The challenged orders approving the settlement and denying appellant's motion for reconsideration are reversed. Appellant is to recover costs on appeal.

Epstein, J., and Baron, J., concurred.

Respondents' petition for review by the Supreme Court was denied December 10, 1997.