Filed 1/27/14  Kalikas v. American Contractors Indemnity Co. CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| ANTHONY KALIKAS, | D062567 |
| Plaintiff, Cross-defendant and Appellant, | |
| v. | (Super. Ct. No. 37-2011-00088987-CU-FR-CTL) |
| AMERICAN CONTRACTORS INDEMNITY COMPANY, | |
| Cross-defendant and Appellant; | |
| JOHN MASTRODIMOS, | |
| Defendant and Respondent; | |
| WILLIAM MASTRODIMOS et al., | |
| Defendants, Cross-complainants and Respondents. | |

APPEAL from a judgment of the Superior Court of San Diego County, Ronald L. Styn and Frederick L. Link, Judges.  Affirmed.

Anthony E. Kalikas, in pro. per., for Plaintiff, Cross-defendant and Appellant.

Law Office of Anthony E. Kalikas and Anthony E. Kalikas for Cross-defendant and Appellant.

The Stone Law Group, Kenneth H. Stone and Rebecca Reed for Defendant and Respondent; and for Defendants, Cross-complainants and Respondents.

Anthony E. Kalikas and American Contractors Indemnity Co. (together Cross-defendants) appeal a judgment entered against them on the cross-complaint for wrongful attachment filed by defendants William (Bill) Mastrodimos and Margaret O'Byrne, as cotrustees of the Mastrodimos/O'Byrne Family Trust (Family Trust) and William Mastrodimos, as trustee of the Country Comfort Trust (CC Trust) (together Defendants). On appeal, Cross-defendants contend the trial court erred (1) in interpreting Civil Code section 3439.07[1] as not independently authorizing the provisional attachment of Defendants' property pending Kalikas's fraudulent transfer action against them, and (2) finding Kalikas wrongfully levied on Defendants' property. Based on our reasoning below, we conclude the trial court correctly interpreted section 3439.07 and found Kalikas wrongfully attached Defendants' property.

---

[1]     All further statutory references are to the Civil Code unless otherwise specified.

2

FACTUAL AND PROCEDURAL BACKGROUND

In July 2010, John Mastrodimos (John) transferred his 50 percent interest in certain real property to the Family Trust.[2] In or about August 2010, John transferred 940 shares of stock in Country Comfort Restaurant, Inc., to the CC Trust.

On or about November 1, 2010, John retained Kalikas to represent him in a lawsuit filed against him and other defendants. In March 2011, John apparently had an unpaid balance of attorney fees owed to Kalikas and refused to sign a substitution of attorney form allowing Kalikas to withdraw as his attorney. In April, Kalikas filed the instant action against John, William and Defendants, alleging causes of action for fraudulent conveyance, concealment, and interference with contractual relations. The fraudulent conveyance cause of action alleged that John transferred his assets, including the real property interest and shares of stock described above, to the named defendants to defraud creditors, including Kalikas.

In conjunction with his lawsuit, Kalikas filed an ex parte application for a right to attach order and order for issuance of a writ of attachment. His application sought a writ of attachment against Defendants' interests in the real property and shares of stock described above. In support of his application, Kalikas submitted his declaration stating that "[u]nder . . . § 3439.07, a creditor who establishes the probable validity of his claim for fraudulent transfer is entitled to petition the trial court for issuance of an order

---

2       To avoid confusion, we refer to John Mastrodimos and William (Bill) Mastrodimos by their first names.

3

granting a writ of attachment against the asset fraudulently transferred, or other provisional remedy, including but not limited to an injunction against further disposition by the debtor or a transferee of the asset fraudulently transferred or its proceeds." The trial court (San Diego County Superior Court Judge Ronald L. Styn) issued the ex parte right to attach order and order for issuance of writ of attachment, as Kalikas requested. On April 19, 2011, the court's clerk issued an ex parte writ of attachment against Defendants' interests in the real property and shares of stock described above.

In June 2011, Defendants filed an application to set aside the right to attach order, quash the writ of attachment, and release the attached property. They argued that because Kalikas's claims against them were not alleged to be based on a contract, there was no basis under Code of Civil Procedure section 483.010 for a writ of attachment to be issued against their property. Kalikas opposed Defendants' application, conceding there never was any contract with Defendants on which to base a writ of attachment under Code of Civil Procedure section 481.010 et seq. However, Kalikas argued a writ of attachment was authorized under section 3439.07, which provides for attachment of property in connection with fraudulent transfer actions. He cited the following language in that statute: "(a) In an action for relief against a transfer or obligation under this chapter, a creditor . . . may obtain: [¶] . . . [¶] (2) [a]n attachment or other provisional remedy against the asset transferred or its proceeds in accordance with the *procedures* described in Title 6.5 (commencing with Section 481.010) of Part 2 of the Code of Civil Procedure." (§ 3439.07, italics added.) He argued that language is a substantive

4

provision authorizing attachment of property subject only to the procedural, and not substantive, provisions of Code of Civil Procedure section 481.010 et seq. In reply, Defendants argued section 3439.07, subdivision (a)(2), does not provide an independent substantive basis for attachment of property and Kalikas was required to satisfy the substantive requirements of Code of Civil Procedure section 483.010 to obtain the writ of attachment against their property.

The trial court granted Defendants' application and issued an order (Order) setting aside the right to attach order, quashing the writ of attachment, and releasing the property levied on pursuant to the writ of attachment. The court disagreed with Kalikas's proposed interpretation of section 3439.07. It considered the language of Code of Civil Procedure section 483.010 and section 3439.07. It quoted section 3439.07, subdivision (b), which provides: "If a creditor has commenced an action on a claim against the debtor, the creditor may attach the asset transferred or its proceeds if the remedy of attachment is available in the action under applicable law and the property is subject to attachment in the hands of the transferee under applicable law." Noting section 3439.07, subdivision (a)(2), sets forth the provisional remedy of attachment available to a creditor, the court concluded section 3439.07, subdivision (b), "specifically limits the remedy of attachment available to a creditor on a claim against a debtor (as in this case), to instances where 'the remedy of attachment is available in the action under applicable law.' The 'applicable law' in this instance is [Code of Civil Procedure section] 483.010[,] which specifically limits attachments to actions based upon a [contract.] In general, the court interprets

5

[section] 3439.07[, subdivisions] (a)(2) and (b) as expanding a creditor's right of attachment only to property not in the name of the debtor.  The court does not interpret this section as also eliminating the statutory requirements for attachment. . . .  Absent [Kalikas's] pursuit of a claim based on [a] contract against William Mastrodimos, attachment is not available, and the . . . Right to Attach Order must be set aside."

Defendants and William then filed a cross-complaint against Cross-defendants (i.e., Kalikas and American Contractors Indemnity Co., the bonding company that issued the undertaking for Kalikas's writ of attachment against Defendants' property), alleging a cause of action for wrongful attachment of their property.  Attached to Defendants' cross-complaint were copies of the undertaking and the notice of attachment and writ of attachment that Kalikas had recorded with the San Diego County Recorder's Office.

Defendants, John and William filed a motion for summary judgment or, in the alternative, summary adjudication of issues.  Defendants sought summary adjudication of their cross-complaint for wrongful attachment against Cross-defendants, citing the Order that found Kalikas's attachment of Defendants' property was not authorized under Code of Civil Procedure section 483.010.  Cross-defendants opposed the motion.  Although the trial court denied the motion for summary judgment, it granted Defendants' motion for summary adjudication of their cross-complaint for wrongful attachment and found Defendants incurred $4,870 in attorney fees and costs as a result of the wrongful attachment.  The court rejected Cross-defendants' argument that Kalikas did not levy on

6

Defendants' property, finding his recording of the notice of attachment and writ of attachment with the county recorder was a levy on their property.

Following a trial on the remaining causes of action, the trial court (San Diego County Superior Court Judge Frederic L. Link) entered a judgment for Defendants, John and William and awarded Defendants $4,870 against Cross-defendants. Cross-defendants timely filed a notice of appeal.

DISCUSSION

I

*Rules for Statutory Construction*

Because the crux of this case involves interpretation of statutory language, we briefly review the rules for statutory construction. The California Supreme Court has set forth general rules for interpreting language in a statute, stating:

> "We begin with the fundamental rule that a court 'should ascertain the intent of the Legislature so as to effectuate the purpose of the law.' [Citation.] In determining such intent '[t]he court turns first to the words themselves for the answer.' [Citation.] We are required to give effect to statutes 'according to the usual, ordinary import of the language employed in framing them.' [Citations.] 'If possible, significance should be given to every word, phrase, sentence and part of an act in pursuance of the legislative purpose.' [Citation.] . . . [Citation.] 'When used in a statute [words] must be construed in context, keeping in mind the nature and obvious purpose of the statute where they appear.' [Citations.] Moreover, the various parts of a statutory enactment must be harmonized by considering the particular clause or section in the context of the statutory framework as a whole." (*Moyer v. Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230.)

When the statutory language is clear and unambiguous and thus not reasonably susceptible of more than one meaning, we adopt the plain meaning of the language and need not apply rules of construction. (*People v. Leal* (2004) 33 Cal.4th 999, 1007.) We decline to follow the plain meaning of a statute only when it would inevitably frustrate the manifest purposes of the legislation as a whole or lead to absurd results. (*People v. Belleci* (1979) 24 Cal.3d 879, 884, superseded by constitutional amendment on another ground as noted in *People v. Moore* (1988) 201 Cal.App.3d 877, 885.) "We may not, under the guise of construction, rewrite the law or give the words an effect different from the plain and direct import of the terms used." (*California Fed. Savings & Loan Assn. v. City of Los Angeles* (1995) 11 Cal.4th 342, 349.) "[S]tatutory language is generally the most reliable indicator of legislative intent." (*Hassan v. Mercy American River Hospital* (2003) 31 Cal.4th 709, 715.) "When used in a statute[,] words must be construed in context, keeping in mind the nature and obvious purpose of the statute where they appear, and the various parts of a statutory enactment must be harmonized by considering the particular clause or section in the context of the statutory framework as a whole." (*People v. Black* (1982) 32 Cal.3d 1, 5.) In the context of construing attachment statutes, we construe those statutes narrowly. "Our starting point is the rule that the Attachment Law statutes (Code Civ. Proc., § 481.010 et seq.) are subject to strict construction because they are purely the creation of the Legislature." (*Vershbow v. Reiner* (1991) 231 Cal.App.3d 879, 882; see also *Epstein v. Abrams* (1997) 57 Cal.App.4th 1159, 1168.)

8

The proper interpretation of a statute is a question of law for our independent determination.  (*People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 432; *California Teachers Assn. v. San Diego Community College Dist.* (1981) 28 Cal.3d 692, 699; *Mart v. Severson* (2002) 95 Cal.App.4th 521, 530.)  Likewise, the application of a statute to undisputed facts is a question of law, subject to our de novo, or independent, review on appeal.  (*International Engine Parts, Inc. v. Feddersen & Co.* (1995) 9 Cal.4th 606, 611; *Lozada v. City and County of San Francisco* (2006) 145 Cal.App.4th 1139, 1149; *Seligsohn v. Day* (2004) 121 Cal.App.4th 518, 522-523.)

II

*Attachment Law Generally*

"In California, 'attachment' is a pure statutory remedy [citation] activated by a plaintiff, under which the property of a defendant is 'seized' by legal process in advance of trial and judgment."  (*Randone v. Appellate Department* (1971) 5 Cal.3d 536, 543, fn. omitted.)  "A writ of attachment allows a plaintiff, in certain prescribed instances, to obtain a pretrial seizure of the property of the defendant-debtor.  [Citation.]  A suspect who suspects that the defendant-debtor has fraudulently transferred assets in order to become judgment proof may also enforce its claim against the transferred property by way of a writ of attachment.  ([§ 3439.07, subds. (a)(2), (b); citation].)"  (*Whitehouse v. Six Corp.* (1995) 40 Cal.App.4th 527, 533.)  " 'The Legislature has determined attachments may properly issue only to secure anticipated recoveries on contract claims

9

in fixed or readily ascertainable amounts. ([Code Civ. Proc.,] § 483.010, subds. (a) and (b).)' " (*Waffer Internat. Corp. v. Khorsandi* (1999) 69 Cal.App.4th 1261, 1277.)

California's attachment laws are generally found at Code of Civil Procedure section 481.010 et seq. (Attachment Law). Importantly in this case, Code of Civil Procedure section 483.010, subdivision (a), provides:

> "Except as otherwise provided by statute, *an attachment may be issued only in an action on a claim or claims for money, each of which is based upon a contract*, express or implied, where the total amount of the claim or claims is a fixed or readily ascertainable amount not less than five hundred dollars ($500) exclusive of costs, interest, and attorney's fees." (Italics added.)

On issuance by a trial court of a right to attach order and writ of attachment (see e.g., Code Civ. Proc., §§ 485.220, 485.540, 488.010), the levying officer (e.g., county sheriff) shall serve a copy of the writ of attachment and a notice of attachment on the defendant. (Code Civ. Proc., § 488.305.) "To attach real property, the levying officer shall comply with [Code Civ. Proc.] [s]ection 700.015 and the recorder shall index the copy of the writ of attachment and a notice of attachment as provided in that section." (Code Civ. Proc., § 488.315.) If a plaintiff obtains a writ of attachment not authorized by the Attachment Law, a defendant has a cause of action against the plaintiff for wrongful attachment. (Code Civ. Proc., § 490.010 et seq.)

In actions for fraudulent transfers, section 3439.07, subdivisions (a) and (b), provide:

> "(a) In an action for relief against a transfer or obligation under this chapter, a creditor . . . may obtain:

"(1) Avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim.

"(2) *An attachment or other provisional remedy against the asset transferred or its proceeds in accordance with the procedures described in Title 6.5 (commencing with Section 481.010) of Part 2 of the Code of Civil Procedure*.

"(3) Subject to applicable principles of equity and in accordance with applicable rules of civil procedure, the following:

"(A) An injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or its proceeds.

"(B) Appointment of a receiver to take charge of the asset transferred or its proceeds.

"(C) Any other relief the circumstances may require.

"(b)  *If a creditor has commenced an action on a claim against the debtor, the creditor may attach the asset transferred or its proceeds if the remedy of attachment is available in the action under applicable law and the property is subject to attachment in the hands of the transferee under applicable law*."  (Italics added.)

If the creditor in a fraudulent transfer action obtains a judgment against the defendant-debtor, the creditor may then levy execution on the transferred asset or its proceeds. (§ 3439.07, subd. (c).)

III

*Attachment under Section 3439.07*

Cross-defendants contend the trial court erred in interpreting section 3439.07 as not independently authorizing a provisional attachment of Defendants' property pending Kalikas's fraudulent transfer action against them.  They assert section 3439.07 sets forth substantive provisions for issuance of writs of attachment *independent* of any substantive

11

requirements for issuance of writs of attachment under Code of Civil Procedure section 483.010, and therefore Kalikas's lack of a contract claim against Defendants or William did not preclude him from attaching Defendants' property pursuant to section 3439.07.

Applying the rules for statutory construction discussed above, we conclude the trial court correctly interpreted section 3439.07 as not providing any authority for issuance of writs of attachment without compliance with the substantive provisions of Code of Civil Procedure section 483.010.  The crux of Cross-defendants' argument is based on section 3439.07, subdivision (a)(2)'s provision allowing a plaintiff in a fraudulent transfer action to obtain an "attachment . . . against the asset transferred or its proceeds in accordance with the *procedures* described in Title 6.5 (commencing with Section 481.010) of Part 2 of the Code of Civil Procedure [i.e., the Attachment Law]." (Italics added.)  They argue that because section 3439.07 requires plaintiffs to only comply with the "procedures" of the Attachment Law, the substantive provisions of the Attachment Law do not apply to attachments of property pursuant to section 3439.07. We disagree.

In their papers below and briefs on appeal, Cross-defendants wholly omit *any* reference to, and discussion of, section 3439.07, subdivision (b), which provides: "If a creditor has commenced an action on a claim against the debtor, the creditor may attach the asset transferred or its proceeds *if the remedy of attachment is available in the action under applicable law and the property is subject to attachment in the hands of the*

12

*transferee under applicable law*."[3]  (Italics added.)  As noted above, in construing statutory language, we must give effect to every word and phrase and consider each clause or provision together with the other clauses and provisions in the same statute and other related statutes.  (*Moyer v. Workmen's Comp. Appeals Bd.*, *supra*, 10 Cal.3d at p. 230.)  We must consider the effect of section 3439.07, subdivision (b), in interpreting the language of section 3439.07, subdivision (a)(2), and in determining whether that latter subdivision sets forth an independent substantive provision for attaching property in fraudulent transfer actions regardless of the substantive requirements for writs of attachment set forth in the Attachment Law.

We believe section 3439.07, subdivision (b)'s language referring to attachments available "under applicable law" necessarily refers to statutory provisions for attachments *other than* those set forth in that statute (i.e., § 3439.07).  That "applicable law" generally will be the Attachment Law, which includes Code of Civil Procedure section 483.010.[4] Therefore, construing the language of section 3439.07 as a whole, it provides for

---

[3]  Because the trial court relied on section 3439.07, subdivision (b), in interpreting section 3439.07, and Defendants' respondents' brief extensively discussed the effect of that subdivision in interpreting section 3439.07, Cross-defendants' apparent strategic decision to ignore section 3439.07, subdivision (b)'s language in their appellants' opening and reply briefs did not assist us in deciding this appeal, or persuade us their proposed interpretation of section 3439.07, subdivision (a)(2), is correct.

[4]  In certain exceptional cases, that "applicable law" may include "other miscellaneous [attachment statutes] (see, e.g., Civ. Code, §§ 3065a, 3152; Fin. Code, § 3144; Food & Agric. Code, § 281; Harb. & Nav. Code, § 495.1; Health and Safety Code, § 11501; Lab. Code, § 5600; Rev. & Tax. Code, §§ 6713, 7864, 8972, 11472, 12860, 18833, 26251, 30302, 32352)."  (See Cal. Law Revision Com. revised com., 15A West's Ann. Code Civ. Proc. (2011 ed.) foll. § 483.010, pp. 49-50.)

13

provisional attachments of assets alleged to have been fraudulently transferred "in accordance with the *procedures* described in" the Attachment Law "*if* the remedy of attachment is *available* in the action *under applicable law* and the property is subject to attachment in the hands of the transferee under applicable law." (§ 3439.07, subds. (a)(2), (b), italics added.) We conclude, contrary to Cross-defendants' assertion, section 3439.07, subdivision (a)(2), does *not* provide any independent substantive provision for attachment of property in fraudulent transfer actions regardless of the substantive requirements for writs of attachment set forth in the Attachment Law (or another applicable law authorizing attachment of property).

We further conclude the term "procedures" as used in section 3439.07, subdivision (a)(2), cannot, as Cross-defendants assert, be construed narrowly to refer to only those technical steps required to effect an attachment and not substantive requirements for attachment. Rather, the term "procedures" should be construed as referring to both the technical and substantive *provisions* of the Attachment Law.[5] The plain and clear meaning of the language of section 3439.07 does not support Cross-defendants' position.[6]

---

[5]    In any event, assuming arguendo the term "procedures" in section 3439.07, subdivision (a)(2), was interpreted narrowly as Cross-defendants assert, that subdivision nevertheless would not provide an independent substantive basis for attachment because, as discussed above, section 3439.07, subdivision (b), requires any attachment related to a fraudulent transfer action to be "*available* in the action *under applicable law*." (Italics added.) Therefore, the substantive requirements of the Attachment Law generally must be satisfied for an attachment of assets alleged to have been fraudulently transferred.

[6]    Assuming arguendo the language of section 3439.07 is ambiguous, we nevertheless would reject Cross-defendants' proposed interpretation of that statute. We note the legislative history supports our interpretation of section 3439.07. When that

14

They have not cited any case or other authority in support of their position and do not persuade us to conclude otherwise.

Because Cross-defendants conceded below that Kalikas did not satisfy the requirements of Code of Civil Procedure section 483.010 and the requirement that his claim be for money based on a contract (or the requirements of any other applicable law authorizing attachment), the trial court correctly concluded Kalikas wrongfully attached Defendants' property and properly issued the Order that set aside the right to attach order, quashed the writ of attachment, and released the property levied on pursuant to the writ of attachment.  As discussed above, section 3439.07 did not provide Kalikas with an independent substantive basis for attaching Defendants' property in connection with his fraudulent transfer action against them.

---

statute was proposed for enactment by the Legislature, the legislative committee commented in part: "Paragraph (2) of subdivision (a) continues the authorization for the use of attachment contained in Section 9(b) of the [former] Uniform Fraudulent Conveyance Act, or of a similar provisional remedy, *when the state's procedure provides therefor*, subject to the constraints imposed by the due process clauses of the United States and state constitutions.  Title 6.5 (commencing with Section 481.010) of Part 2 of the Code of Civil Procedure [the Attachment Law] is an example of such a statute." (Legis. Com. com., 12A West's Ann. Civ. Code (1997 ed.) foll. § 3439.07, p. 341, italics added.)  The Legislature presumably intended to use the term "procedure" as referring to other statutory provisions, such as the Attachment Law (including Code Civ. Proc., § 483.010), that set forth both substantive and procedural provisions for attachment of property.  Cross-defendants have not cited any legislative history or other authority showing otherwise.  Furthermore, attachment statutes must be narrowly construed. (*Vershbow v. Reiner*, *supra*, 231 Cal.App.3d at p. 882.)

IV

*Wrongful Attachment Cross-complaint*

Cross-defendants contend the trial court erred by granting Defendants' motion for summary adjudication of their cross-complaint for wrongful attachment because Kalikas did not levy on Defendants' property. Code of Civil Procedure section 490.010, subdivision (a), provides for an action for wrongful attachment where "[t]he *levy under a writ of attachment* or the service of a temporary protective order in an action in which attachment is not authorized." (Italics added.) Assuming arguendo the mere issuance of a writ of attachment of property does not constitute a "levy under a writ of attachment" under Code of Civil Procedure section 490.010, subdivision (a), any further measure taken to secure or "perfect" the attachment of property in accordance with the Attachment Law constitutes a "levy" on that property.[7] For example, on issuance of a right to attach order and writ of attachment, the "levying officer" (e.g., county sheriff) shall serve a copy of the writ of attachment and a notice of attachment on the defendant. (Code Civ. Proc., § 488.305.) Also, "[t]o attach real property, the levying officer shall comply with [Code Civ. Proc.] [s]ection 700.015 and the recorder shall index the copy of the writ of

---

[7] Although we need not, and do not, decide the question of whether the issuance of a writ of attachment, by itself, constitutes a "levy" on property, there appears to be authority to support that position. When Code of Civil Procedure section 490.010 was proposed for enactment by the Legislature, the legislative committee commented in part: "Subdivision (a) provides that wrongful attachment occurs when a writ of attachment is levied or a protective order is served in an action where attachment is not authorized. . . ." (Legis. Com. com., 15A West's Ann. Code Civ. Proc. (2011 ed.) foll. Code Civ. Proc., § 490.010, p. 363.)

16

attachment and a notice of attachment as provided in that section."  (Code Civ. Proc., § 488.315.)  The actions by the levying officer constitute levying on the attached property.

In this case, the undisputed facts show Kalikas levied on Defendants' property. Defendants' separate statement of undisputed facts assert Kalikas levied on their property. In support of that assertion, Defendants' submitted William's declaration, in which he stated: "[P]roperty described in the Writ of Attachment and Order for Issuance of Writ of Attachment was levied upon.  A true and accurate copy of the Notice of Attachment filed with the San Diego County Recorder's Office is lodged herewith as Exhibit F." Defendants lodged with the court that Exhibit F, which reflects the recording of the notice of attachment with the San Diego County Recorder's Office on April 20, 2011, as document No. 2011-0206948.

In opposing Defendants' motion for summary adjudication of their cross-complaint for wrongful attachment, Cross-defendants argued Kalikas did not levy on Defendants' property.  In support of their argument, they cited a conclusory statement in Kalikas's declaration that he did not levy on Defendants' property.  Kalikas declared: "After obtaining the writ of attachment and right to attach order, I never took any other action to actually levy against the property described in the writ of attachment and right to attach order prior to the date when this Court quashed the writ of attachment."

However, Kalikas's declaration did not refute Defendants' evidence showing the notice of attachment of their property was recorded with the San Diego County

17

Recorder's Office *before* the writ of attachment was quashed by the trial court. As noted above, the notice of attachment was recorded on April 20, 2011. The Order that quashed the writ of attachment was not issued until July 11, 2011. Therefore, it is undisputed the notice of attachment was recorded with the San Diego County Recorder's Office by the levying officer (i.e., the San Diego County Sheriff) in accordance with Kalikas's instructions. We conclude, as did the trial court, that this action by Kalikas constituted a wrongful levy on Defendants' property within the meaning of Code of Civil Procedure section 490.010. Cross-defendants do not cite any case or other authority persuading us to reach a contrary conclusion. The trial court correctly granted Defendants' motion for summary adjudication of their cross-complaint for wrongful attachment.

## DISPOSITION

The judgment is affirmed. Defendants are entitled to costs on appeal.


McDONALD, J.

WE CONCUR:


BENKE, Acting P. J.


IRION, J.


18