Filed 1/29/16  Escobar v. Fresh Express CA6
## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| JAVIER ESCOBAR,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>FRESH EXPRESS, INC.,<br><br>    Defendants and Respondents;<br><br>COUNTY OF SANTA CLARA,<br><br>    Third Party Claimant and Appellant. | H038185<br>(Monterey County<br>Super. Ct. No. M102200) |

This is the second of three related appeals reflecting attempts by the County of Santa Clara (County) to obtain compensation for services it rendered to Javier Escobar on account of injuries Escobar suffered due to negligence by an employee of defendant Fresh Express, Inc.  (See *Escobar v. Fresh Express; County of Santa Clara*, No. H038121 (*Escobar I*); *County of Santa Clara v. Escobar*, No. H039600 (*Escobar III*).) This appeal concerns the viability of an attempt by County to enforce a judgment lien in Monterey County, where the underlying judgment was rendered.  The Monterey court denied relief on the ground that County's sole remedy lay in pursuing Escobar in an action then pending in Santa Clara County.  We have concluded that this was error. However it is possible, perhaps likely, that by virtue of the Santa Clara matter, this

proceeding should be stayed. Because those issues have not been addressed by the court below, and because this matter is likely to be rendered moot by further proceedings in the Santa Clara action, we will reverse with the suggestion that the court entertain a motion to abate this matter pending the outcome of that case.

## BACKGROUND[1]

As described in more detail in the companion appeals, plaintiff Javier Escobar was negligently injured by Jose Tinoco, an employee of defendant Fresh Express. Escobar's injuries were treated at Santa Clara Valley Medical Center, which is owned and operated by lien claimant County. Escobar filed a lawsuit in Monterey County, culminating in a judgment awarding him nearly $5.7 million against Tinoco and Fresh Express. County asserted a lien against the judgment for $1,249,545.38 pursuant to Government Code section 23004.1 (section 23004.1). Escobar's attorney disputed County's entitlement to this amount. Fresh Express issued a check for the amount claimed, but made it payable to both Escobar's attorney and to County.

When Escobar's attorney refused to surrender the proceeds of the joint check, County filed an action in Santa Clara County against Escobar and Fresh Express, asserting that both were liable for the unpaid lien. The Santa Clara court entered a judgment on demurrer in favor of Fresh Express, which County promptly appealed, leading to *Escobar I*. However, the court overruled a demurrer filed by Escobar, after which County prosecuted its claims against him to a successful conclusion, producing *Escobar III*.

Meanwhile, after the Santa Clara court entered judgment for Fresh Express, County moved in the Monterey court for an order "directing defendants Fresh Express

---

[1] On our own motion, we take judicial notice of the records in *Escobar I* and *Escobar III* insofar as they assist in providing a complete picture of the procedural background for the present appeal.

2

and Tinoco, or their principal, to pay the County directly the full amount of the County's lien." Both Escobar and Fresh Express appeared in opposition to the motion. Escobar argued that County was not a party to the action, and that the only way for County to enforce its lien was through an independent action. He also contended that exclusive jurisdiction to determine the amount of the lien was vested in the Workers' Compensation Appeals Board (WCAB). Fresh Express argued that relief was barred by the doctrine of res judicata, in that County was seeking "the same relief based on the same theories of liability from the same defendant that was already involved in the litigation in the Santa Clara County Superior Court." (Emphasis omitted.) Fresh Express accused County of "an unfortunate effort to venue shop."

The Monterey court denied County's motion. Although it professed to agree with the Santa Clara court's ruling—which appeared to turn on the premise that County had a remedy against Fresh Express in the Monterey court—that court now seemed to conclude that County's only remedy lay in the claims he was pursuing against Escobar in the Santa Clara court. The court ruled that relief was precluded by the Santa Clara court's assumption of jurisdiction over those claims.

County filed this timely appeal.[2]

---

[2] The order was appealable as an order after judgment. (Code Civ. Proc., § 904.1, subd. (a)(2); *National Technical Systems v. Commercial Contractors, Inc.* (2001) 89 Cal.App.4th 1000, 1006, fn. 5.)

## DISCUSSION[3]

### *I.  Introduction*

The question presented is whether the court below erred in refusing to enforce County's statutory lien on the judgment previously rendered in this action in favor of plaintiff Escobar and against defendants Tinoco and Fresh Express.  The court noted Escobar's concession that "County has a valid statutory lien."  The court further acknowledged that the lien lay "against th[e] judgment" rendered in favor of Escobar.  However, the court posited that the judgment had been "satisfied in full by Fresh Express when the funds were tendered to Mr. Escobar's counsel[,] who then entered an Acknowledgment of Satisfaction of Judgment."  The court construed County's motion to rest on the "assum[ption] that the 'judgment' on which it has a lien is the amount that Fresh Express was ordered to pay to Mr. Escobar."  The court rejected this premise, citing *Lindsey v. County of Los Angeles* (1980) 109 Cal.App.3d 933, for the proposition that "the 'judgment' is the amount Fresh Express has already paid to Mr. Escobar."  Accordingly, the County's remedy—and by necessary implication, its only remedy—lay in the cause of action it was pursuing against Escobar in Santa Clara County.

We cannot accept any part of this reasoning.  First, so far as this record shows, the judgment has not been satisfied; nor has Fresh Express "already paid" the disputed amount "to Escobar" or anyone else.  The "judgment" to which County's lien attached was in fact "the amount that Fresh Express was ordered to pay to Mr. Escobar"—or more precisely, the obligation to pay that amount to County—not the unnegotiated check Fresh Express gave to Escobar's attorney.  And under authorities dealing with analogous liens,

---

[3] On County's motion to consolidate this appeal with *Escobar I*, we ordered the matters considered together for purposes of briefing, oral argument, and decision.  On further review we have concluded that despite their common factual background, each case presents more unique issues than shared ones, warranting separate opinions for each. We vacate our previous order insofar as it directed otherwise.

4

payment to Escobar—even if it occurred—would not discharge Fresh Express's obligation to pay County the amount to which it was entitled under its lien. We see no reason not to follow those authorities here: the Legislature could not have intended the lien it created in section 23004.1, subdivision (b), to be such a toothless remedy that a judgment creditor could simply refuse to honor it, turn over the encumbered amount to the judgment debtor, and thereby absolve itself of further liability.

## II. *The Judgment Was Not Satisfied*

Under the facts shown by this record, the Escobar judgment has been neither paid nor satisfied.[4] A judgment for money "may be satisfied by *payment of the full amount required to satisfy the judgment* . . . ." (Code Civ. Proc., § 724.010, subd. (a), italics added.) The disputed portion of the judgment here has not been "paid" to anyone. The trial court supposed that Fresh Express had satisfied the judgment when it "tendered" a check "to Mr. Escobar's counsel . . . ." But the check was made jointly payable to "Santa Clara Valley Medical Center and Carcione, Cattermole, Dolinaki . . . ." Such a tender is not such "payment" as will satisfy a judgment. " 'Payment to a judgment creditor is governed by the cases and statutes which govern commercial transactions. [Citation.]' " (*Gray1 CPB, LLC v. SCC Acquisitions, Inc.* (2015) 233 Cal.App.4th 882, 893, quoting *Long v. Cuttle Construction Co.* (1998) 60 Cal.App.4th 834, 837.) Payment by means of an uncertified check "suspend[s]," i.e., does not discharge, the underlying obligation. (Cal. U. Com. Code, § 3310, subd. (b)(1).) When a judgment is paid by check, "the obligation of the judgment creditor to give or file an acknowledgment of satisfaction of judgment arises only when the check . . . has *actually been honored* upon presentation

---

[4] All copies of the acknowledgment of satisfaction in these records appear to reflect the satisfaction of a judgment in favor not of Escobar, but of Jose Guadalupe Montoya-Medina, a co-plaintiff in the Monterey action. We do not rest our analysis on that point, however, because it has not been addressed by the parties.

[i.e., to a bank] for payment." (Code Civ. Proc., § 724.010, subd. (c); cf. *Gray1 CPB*, *supra*, at p. 894, citing Cal. U. Com. Code, § 3310, subd. (a) [upon acceptance by judgment creditor, *cashier's* check was "the same as . . . cash" and effected immediate satisfaction of judgment].) Here the check has never been negotiated; nor is it likely to be, unless by court order, because its negotiation requires the endorsement of both County and Escobar's attorney, and they cannot agree on its disposition. (See Cal. U. Com. Code, § 3110, subd. (d), italics added [when check is made out to multiple payees named conjunctively, it "may be negotiated, discharged, or enforced *only by all of them*"].) To date, in short, the check by which the judgment was supposedly satisfied has been a mere piece of paper. The funds it represents presumably rest securely in the account of Fresh Express's insurer. The mere issuance of the check did not constitute a payment of those funds to County, and insofar as Escobar claims an entitlement to a portion of them, it was not a payment to him either. Therefore, insofar as the purported satisfaction of the judgment could have any effect on County's interest in the matter, County was entitled to have it set aside. (See *Argue v. Wilson* (1935) 3 Cal.App.2d 645, 646 [satisfaction of judgment properly vacated where insurer taken over by receiver before check was honored]; see *Epstein v. Abrams* (1997) 57 Cal.App.4th 1159, 1170 [judgment debtors who connived with judgment creditor to defeat creditor's attorney's lien "would not be discharged from their obligation to pay the judgment based on [the judgment creditor's] execution of a satisfaction of judgment"].)

The precise application of these provisions to a judgment encumbered by liens, as this one is, may be open to debate. But one fact clearly appears: the disputed portion of the present judgment has not been satisfied, because it is represented in an instrument that has not in fact been negotiated.

### III.  Payment in Defiance of the Lien Could Not Impair County's Rights Against Fresh Express

Even if Fresh Express had effectively transferred the disputed funds to Escobar, as the court below supposed, that transfer would not prevent County from enforcing its lien against Fresh Express.  In this regard the case appears identical in principle to *Epstein v. Abrams, supra,* 57 Cal.App.4th 1159, where the parties to litigation attempted unsuccessfully to defeat a lien asserted against the judgment by an attorney who had represented one of the parties in the earlier stages of the action.  After the attorney filed a successful summary judgment motion and obtained a judgment for attorney fees, he withdrew and served a notice of lien for unpaid fees.  (*Id.* at pp. 1163-1164.)  After various further machinations, the original parties sought court approval of a settlement by which they would dismiss their still-pending claims against one another, and the judgment creditor would "release the judgment for attorney fees" against the plaintiffs.  (*Id.* at p. 1164.)  Meanwhile, the attorney secured an attachment against that judgment in an independent action brought to enforce his lien.  The trial court nonetheless approved the parties' settlement, and the beneficiary of the judgment for attorney fees filed an acknowledgment of satisfaction.  The attorney appealed from an order denying his motion to set aside the satisfaction and the order approving the settlement.

The reviewing court held that the trial court lacked statutory authority to approve the settlement, and more importantly here, that even if the court had been empowered to make such an order, it erred by doing so.  The settlement was improper with respect to the judgment creditor, whom it would allow "to foreclose any possibility of future liability on his part, without paying his attorney for services rendered in obtaining the judgment." (*Id.* at p. 1170.)  In addition, the settlement was "improper—and unwise" with respect to the plaintiff judgment debtors, who had thereby exposed themselves to independent liability to the attorney:  " ' "A contingent fee agreement vests the attorney with an equitable interest in that part of the client's cause of action which is agreed upon

7

as the contingent fee.  This proposition may be given practical effect by the imposition of a constructive trust for the protection of the attorney's equitable interest, by acknowledging the existence of an express trust created by the contingent fee agreement in favor of the attorney, or by ruling that *neither the client nor the opposite party, if the latter has knowledge of the attorney's rights under the contingent fee agreement, can so compromise the litigated subject matter as to defeat the attorney's rights . . . .*"  (6 Cal.Jur.2d, Attorneys at Law, § 192.)  It is also true that *a debtor will not be discharged from his obligations by performance rendered to the assignor after notice of the assignment*.  [Citations.]'  (*Jones v. Martin* (1953) 41 Cal.2d 23, 27-28, 256 P.2d 905, emphasis added; see also *Siciliano v. Fireman's Fund Ins. Co.* [(1976)] 62 Cal.App.3d [745] at p. 757, 133 Cal.Rptr. 376.)"  (*Ibid.*, second italics added.)  Under these principles, the court concluded, the plaintiffs "as debtors would not be discharged from their obligation to pay the judgment based on [the judgment creditor's] execution of a satisfaction of judgment, where, as here, [the plaintiffs] had notice of appellant's attorney's lien."  (*Ibid.*; see *Siciliano*, *supra*, at pp.757-758.)

We see no reason to suppose that the principles applied in *Epstein* are any less applicable here.  They support the conclusion that a lienholder in County's position has remedies against *both* the judgment creditor *and* the judgment debtor.

Nor do we find support for a contrary conclusion in *Lindsey v. County of Los Angeles*, *supra*, 109 Cal.App.3d 933, which the trial court cited.  The plaintiff in that action sought a declaration that a county's lien under Section 23004.1 must be equitably reduced to reflect the expenses incurred by the plaintiff in securing a settlement in his personal injury action against a tortfeasor.  The court rejected this contention on the rationale that the plaintiff was independently indebted to the county and that the settlement merely provided a source of funds from which the debt could be paid.  The court below echoed the statement in *Lindsey* that "[t]he obligation for which the county

8

had a lien was a debt owed by Lindsey." (*Lindsey*, *supra*, at p. 939.) This is an ambiguous statement and, lifted out of context, may invite misconstruction. It is true that any lien under Section 23004.1—as well as any action brought by a county under that section, along with any other attempt to secure a remedy in circumstances like these— may be said to grow out of the patient's underlying obligation to pay the County for medical services received. Equally indispensable, however, is the liability of a third party for the injuries that occasioned those services. And in the case of the lien created by Section 23004.1, subdivision (b), the lien may be said to grow most immediately out of the county's right of action, also conferred by that section, *against the tortfeasor*.

In any event, whatever the court meant by the sentence at issue, it did *not* purport to conclude that the availability of a right of action against the injured person *foreclosed* an attempt to *enforce the lien* when the tortfeasor has refused to honor the lien but has instead surrendered control of the encumbered funds to the injured person's attorney.

### IV. Effect of Other Pending Action

As we have concluded, the fact that County has remedies against Escobar does not in any way militate against the conclusion that it also has remedies against Fresh Express. However, County's Santa Clara action against Fresh Express remained pending when it applied to the Monterey court for relief. (See Code Civ. Proc., § 1049 [action "is deemed to be pending from the time of its commencement until its final determination upon appeal . . ."].) As a result there were two actions arising from the same controversy and pending in two different courts at the same time.[5] We do not fault County in this; the

---

[5] Conceivably it could be argued that the two actions do not involve the same cause of action under authorities construing that phrase relatively narrowly in this context. (See 5 Witkin, Cal. Procedure (5th ed. 2008) Pleading, § 1147, pp. 571-572.) However we have no doubt that the specific legal theory pursued here—direct enforcement of the judgment lien against Fresh Express—could have been joined with County's other claims in the Santa Clara action. (See *Holstein v. Superior Court* (1969)

9

Santa Clara court had dismissed the claims brought there against Fresh Express, and had all but directed County to pursue those claims in the Monterey court. As we have concluded in *Escobar I*, that order was erroneous. But County's appeal from it meant that the action remained pending even as County pursued substantially the same relief, against the same party, in the Monterey court. Our reversal of the judgments in both cases will mean that both are still pending in their respective superior courts unless and until one of them is disposed of by other means. On remand, then, the Monterey court should invite a motion to stay further proceedings before it until the Santa Clara matter— which was earlier filed, as regards County's claims—is resolved.

## DISPOSITION

The order appealed from is reversed. Costs to appellant County of Santa Clara.

---

275 Cal.App.2d 708, 710; *Mitchell v. Superior Court* (1972) 28 Cal.App.3d 759, 763; Code Civ. Proc., § 708.220.)

_____
                        RUSHING, P.J.

WE CONCUR:

_____
         PREMO, J.

_____
         ELIA, J.

11